COMPREHENSIVE ORTHOPAEDICS AND
MUSCULOSKELETAL CARE, LLC, ET AL.
*v.* ALFREDO L. AXTMAYER ET AL.
(SC 18304)

Rogers, C. J., and Norcott, Katz, Palmer, Zarella, McLachlan and Quinn, Js.*

* This case originally was argued before a panel of this court consisting of Justices Norcott, Katz, Palmer and McLachlan and Judge Quinn. Thereafter, the court, pursuant to Practice Book § 70-7, sua sponte, ordered that the case be considered en banc. Accordingly, Chief Justice Rogers and Justice Zarella were added to the panel, and they have read the record, briefs and transcript of oral argument.

Argued April 28—officially released October 20, 2009

*Dominic Fulco III*, with whom were *Robert J. Durbin*, and, on the brief, *Maurice T. FitzMaurice* and *Edward F. Spinella*, for the appellants (plaintiffs).

*Michael F. O'Connor*, with whom were *Scott R. Ouellette* and, on the brief, *James G. Williams*, for the appellees (defendants).

*Opinion*

McLACHLAN, J. The sole issue on appeal is whether the arbitrator exceeded his authority in declining to award attorney's fees pursuant to the parties' arbitration agreement. The plaintiffs, Comprehensive Orthopaedics and Musculoskeletal Care, LLC (Comprehensive), and certain physician members of Comprehensive,[1] appeal[2] from the judgment of the trial court, which denied the plaintiffs' motion to vacate in part the arbitration award pursuant to General Statutes § 52-418 (a) (4),[3] because it concluded that the arbitrator did not exceed his authority by determining that Comprehensive did not "prevail" on its underlying restrictive covenant claim. On appeal, the plaintiffs claim that the arbitrator exceeded his authority by declining to award attorney's fees because Comprehensive "prevailed" under Connecticut law on its underlying claim, and, therefore, the arbitration agreement required the arbitrator to award attorney's fees. The defendants, Alfredo

[1] In addition to Comprehensive, the plaintiffs include Paul H. Zimmering, Jeffrey Pravda, Robert Dudek, Leonard Kolstad, Ronald Paret and Robert Biondino. We refer to the plaintiffs individually by name where necessary and collectively as the plaintiffs.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

L. Axtmayer (Axtmayer) and Alfredo L. Axtmayer, M.D., P.C., claim that the award was proper because the arbitrator's determination that Comprehensive did not prevail is not reviewable. We agree with the defendants, and, accordingly, affirm the judgment.

Axtmayer, a physician, was employed by the plaintiffs pursuant to an employment agreement (agreement). Section 11 of the agreement contains a restrictive covenant that prohibits Axtmayer from competing with Comprehensive or disrupting any of its business relationships for a period of three years subsequent to the termination of Axtmayer's employment. The restrictive covenant's terms apply to various towns in the state and, in addition, prohibit Axtmayer from maintaining a business relationship with various Connecticut hospitals outside of the restricted territories.[4] Section 11 (e) of the agreement requires Axtmayer to pay a liquidated damages award of $150,000 if he violates the terms of the covenant. Section 11 (d) of the agreement, however, provides that "[i]n the event the provisions of [§] 11 are deemed to exceed the time, geographic, or occupational limitations permitted by applicable law, then such provisions shall be automatically reformed to the maximum time, geographic or occupational limitations permitted by applicable law." At some point during the employment period, the plaintiffs terminated Axtmayer.

Subsequently, the parties entered into an arbitration agreement to submit various issues arising from the employment relationship, including the question of whether Axtmayer had violated the terms of the restric-

---

[4] The covenant set forth a restricted territory comprised of Cheshire, Wallingford, Meriden, North Haven, Northford, Southington, Durham, Hamden, Middlefield, Kensington and Berlin, and prohibited Axtmayer from maintaining a relationship with Veteran's Memorial Medical Center, Hartford Hospital, University of Connecticut Health Center, Charlotte-Hungerford Hospital, Hospital of St. Raphael, Yale-New Haven Hospital and Bradley Memorial Hospital.

tive covenant.[5] In that submission, the parties agreed that "[a]s to [§] 11 of the . . . [a]greement . . . the [a]rbitrator shall award attorney's fees and costs only to [Comprehensive] and only if [Comprehensive] prevails in its claims under [§] 11 of the . . . [a]greement." The parties further agreed that the arbitrator's award could only be vacated on the basis of the grounds set forth in § 52-418. After the presentation of testimony and evidence, the arbitrator found that Axtmayer had "established his solo, competitive practice within the restrictive territory almost immediately after his ouster." Moreover, the arbitrator found that Axtmayer had continued to have a business relationship with many of the medical institutions covered by the restrictive covenant. Although the arbitrator found that those facts weighed in favor of enforcing the covenant, the arbitrator concluded that the time, geographical and occupational limitations imposed by the covenant were excessive. Accordingly, pursuant to the automatic reformation provision in the agreement, the arbitrator reformed the covenant's restrictions[6] and reduced the liquidated damages to $75,000 from $150,000. With respect to attorney's fees, the arbitrator concluded that "[i]n view of the reformation, no attorney's fees and costs are awarded to [Comprehensive]."

On February 4, 2008, the plaintiffs filed an application with the Superior Court to vacate the award only with respect to the arbitrator's decision not to award attorney's fees. The plaintiffs claimed that the arbitrator

---

[5] The arbitration agreement provides that the parties "have agreed to submit to binding arbitration any and all issues or claims that they have against each other in order to, among other reasons, reach an expedited resolution of their claims and reduce their expenses . . . ." The parties submitted claims that arose out of Axtmayer's employment and subsequent termination including breach of contract, breach of fiduciary duty and bad faith, and claims that arose out of a lease of premises between the two parties.

[6] The arbitrator did not articulate the parameters of the new restrictions set forth on the basis of his reformation.

exceeded his authority because the arbitration agreement provided that "the [a]rbitrator shall award attorney's fees and costs . . . if [Comprehensive] prevails in its claims under [§] 11 . . . ." On March 3, 2008, the defendants filed an application to confirm the arbitrator's decision and award. On March 26, 2008, the trial court denied the plaintiffs' application to vacate in part. The trial court concluded that the submission to arbitration was unrestricted and that the arbitrator had the authority to fashion any remedy that was rationally related to a plausible interpretation of the agreement. Accordingly, the trial court concluded that, in light of the arbitrator's reformation of the restrictive covenant, the arbitrator reasonably could have concluded that Comprehensive did not prevail on its claims and, therefore, was not entitled to attorney's fees. On April 14, 2008, the trial court granted the defendants' application to confirm the award.[7] This appeal followed.

"Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes,

---

[7] On April 11, 2008, the plaintiffs filed a motion to reargue, but that filing was incomplete and was returned to the plaintiffs. The plaintiffs filed a proper motion on April 25, 2008, which was beyond the twenty day period in which to file a timely motion to reargue. On June 11, 2008, the trial court issued a memorandum of decision in which it granted the plaintiffs' motion to reargue but denied the requested relief. In that memorandum, the court rejected the plaintiffs' new contention that the submission was restricted and stated that even if the submission was restricted, the arbitrator was within his authority to "resolve 'any and all claims [the parties] have against each other.' "

we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . . [Section] 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005). The standard for reviewing a claim that the award does not conform to the submission requires what we have termed " 'in effect, de novo judicial review.' " Id., 84. "Although we

have not explained precisely what 'in effect, de novo judicial review' entails as applied to a claim that the award does not conform with the submission . . . [o]ur inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred." Id., 85.

"In determining whether an arbitrator has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue, not whether that issue was correctly decided. Consequently, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator's decision cannot be overturned even if the court is convinced that the arbitrator committed serious error."[8] (Internal quotation marks omitted.) Id., 86 n.7, quoting 1 M. Domke, Commercial Arbitration (3d Ed. 2003) § 39:6, pp. 39-12 through 39-13. Moreover, "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 585, 440 A.2d 774 (1981).

---

[8] This directive is distinguishable from a "manifest disregard" analysis. In *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 85, we clarified that a claim that an arbitrator has exceeded his authority may be established by showing that an award failed to conform to the submission, or that the arbitrator manifestly disregarded the law. In *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992), we had adopted a three part test to determine whether an arbitrator has manifestly disregarded the law. In the present case, the plaintiffs do not claim error under the manifest disregard standard, and, accordingly, we confine our review to whether the award conformed to the submission.

"Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 110, 779 A.2d 737 (2001).

In the present case, we conclude that the arbitrator's decision not to award attorney's fees conformed to the submission, and, accordingly, that the arbitrator did not exceed his authority. At the outset, it is helpful to distinguish this case from cases in which we have vacated an arbitration award on the ground that the arbitrator exceeded his authority. In the leading case of *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 99–100, we determined that the arbitrator's award of double damages conformed to the submission, but that his award of attorney's fees did not conform to the submission, and therefore, that he had exceeded his authority with respect to that award. We reached differing results on the basis of the scope of the submission. In *Harty*, the submission asserted that " 'it is understood and agreed that the arbitrators are not authorized or entitled to include as part of any award rendered by them, special, exemplary or punitive damages or amounts in the nature of special, exemplary or punitive damages regardless of the nature or form of the claim or grievance that has been submitted to arbitration . . . .' " Id., 76. With respect to double damages, we concluded that because "the submission's limitation on an award of 'punitive damages,' or 'damages in the nature of punitive damages,' is ambiguous with respect to whether the contract provision was designed to

exclude . . . double damages"; id., 98; the arbitrator's award could not be deemed outside the scope of the submission, in effect, because he was " 'arguably construing' " the contract. Id., 99; see also *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision").

In contrast, with respect to the award of attorney's fees, because "attorney's fees and costs provide the same relief and serve the same function as would be afforded by common-law punitive damages," that award did not conform to the submission's express prohibition as to those types of damage awards. *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 99–100. Likewise, in other cases, our determination that an arbitrator has exceeded his authority has been premised on similar circumstances in which the arbitrator's award included items that were not submitted to, or outside the scope of, the arbitration. See *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 232, 951 A.2d 1249 (2008) (award conferred remedy to nonparties); *Board of Education* v. *AFSCME*, 195 Conn. 266, 273, 487 A.2d 553 (1985) (award granted on basis of document outside scope of collective bargaining agreement; submission expressly prohibited such review); *Waterbury Construction Co.* v. *Board of Education*, 189 Conn. 560, 563, 457 A.2d 310 (1983) (award determined, in part, on basis of item parties had not submitted to arbitration); *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606, 616, 109 A.2d 240 (1954) (award included reduction of base pay rates despite fact that issue of base pay rates not submitted to arbitration), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955).

In the present case, there were two possible awards with respect to the submission regarding the plaintiffs' restrictive covenant claim. If the arbitrator determined that Comprehensive had prevailed, then the submission required the award of attorney's fees. If, on the other hand, the arbitrator determined that Comprehensive did not prevail, the submission did not permit the award of attorney's fees. So long as the arbitrator rendered one of these two possible awards, we cannot say that the award did not conform to the submission. Whether Comprehensive "prevailed" was a question uniquely for the arbitrator. Although the arbitrator awarded the plaintiffs $75,000 in liquidated damages, he determined that the terms of the original covenant were excessive, and in view of his reformation, the arbitrator declined to award attorney's fees—implicitly concluding that Comprehensive did not prevail on its claim. It is irrelevant whether we would reach the same conclusion that the arbitrator reached or even whether the arbitrator correctly interpreted the agreement. *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 86 n.7 ("a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract" [internal quotation marks omitted]); *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 106, 438 A.2d 1171 (1981) ("[i]f a submission is unrestricted, the arbitrators are not required to decide the issues according to law and the award cannot be reviewed for errors of law or fact").[9]

---

[9] In support of its assertion that the court may review the arbitrator's conclusions of fact and law with respect to the award of attorney's fees, the dissent principally relies on cases from the intermediate Maryland Court of Appeals. See footnote 6 of the dissent. The rationale underpinning those cases was premised on the decision of *Agnew* v. *Lacey Co-Ply*, 33 Wash. App. 283, 654 P.2d 712 (1982), cert. denied, 99 Wash. 2d 1006 (1983), which the Washington Court of Appeals recently rejected outright in *Morrell* v. *Wedbush Morgan Securities, Inc.*, 143 Wash. App. 473, 487, 178 P.3d 387 (2008) ("*Agnew* court thereby corrected what it perceived as an arbitrators' legal mistake in a manner that Washington law does not permit"). We,

In short, the question comes down to whether the arbitrator had the authority to reach the issue, not whether the issue was correctly decided. We reiterate that "[w]here the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 93, 868 A.2d 47 (2005).[10] In arguing that the trial court improperly declined to review the arbitrator's determination de novo, the plaintiffs fail to recognize this distinction. That is, our standard of " 'in effect, de novo judicial review' "; *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 84; relates to whether the parties have vested the arbitrator with the *authority* to decide the issue, not de novo review of whether the arbitrator correctly *decided* the issue. As we have noted, "as long

however, find ample support for our conclusion. In *Moore* v. *First Bank of San Luis Obispo,* 22 Cal. 4th 782, 788, 996 P.2d 706, 94 Cal. Rptr. 2d 603 (2000), the arbitrator, despite awarding the plaintiff all the relief he sought, failed to make a finding as to which party had prevailed. Although the plaintiff argued that the arbitrator implicitly designated him as the prevailing party, the court determined that, at most, the arbitrator's failure to designate a prevailing party constituted an error of law, and that "[e]ven if legally erroneous, such an arbitral decision as to who, if anyone, prevailed . . . [was] not . . . reviewable . . . ." See also *DiMarco* v. *Chaney,* 31 Cal. App. 4th 1809, 1815, 37 Cal. Rptr. 2d 558 (1995) (having made finding that party had prevailed, arbitrator compelled to award attorney's fees, but would *not* have been improper if no such finding made).

[10] On appeal, the plaintiffs argue that the arbitration agreement was to be governed by Connecticut law, and that under our law, Comprehensive was the prevailing party. Despite the fact that the arbitration agreement contained a choice of law provision, the plaintiffs cite no authority for the proposition that such a clause compels a particular result when the arbitrator has the authority to determine the factual and legal issues presented. Of course, if the arbitrator had determined an issue on the basis of New York law, for example, despite the clear choice of law provision, such an act likely would form the basis for a colorable "manifest disregard" claim. See *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 95.

as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced." (Internal quotation marks omitted.) Id., 86 n.7. In short, because the award conformed to the submission, the arbitrator did not exceed his authority.

The dissent's focus, like the plaintiffs', on whether the arbitrator correctly determined that Comprehensive "prevailed" is misplaced. Such a query focuses not on whether the arbitrator exceeded his authority, but on whether the arbitrator was wrong on a legal or factual issue. In attempting to demonstrate the arbitrator's error, the dissent engages in the expanded scope of judicial review that our law expressly prohibits, namely, review of the arbitrator's factual and legal conclusions. See, e.g., *Bridgeport* v. *Bridgeport Police Local 1159*, supra, 183 Conn. 106 ("award cannot be reviewed for errors of law or fact"); see also *Moore* v. *First Bank of San Luis Obispo*, 22 Cal. 4th 782, 788, 996 P.2d 706, 94 Cal. Rptr. 2d 603 (2000) (arbitrator's failure to designate prevailing party constituted error of law and "[e]ven if legally erroneous, such an arbitral decision as to who, if anyone, prevailed . . . [was] not . . . reviewable"). More importantly, expanded judicial review is contrary to our well settled and deferential policy favoring arbitration. See, e.g., *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 708, 846 A.2d 862 (2004) (Arbitration is "well recognized as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process . . . . Thus, [i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective . . . ." [Internal quotation marks omitted.]); *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 110 (goal of arbitration is efficient, economical and expeditious res-

olution of private disputes); *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 345 n.6, 464 A.2d 785 (1983) ("[b]ecause of the public policy favoring expeditious dispute resolution in the informal context of arbitration rather than in the more formal, time-consuming and expensive context of ordinary litigation, we have always respected the autonomy of the arbitration process and the attendant authority to decide questions of law and fact consistent with the submission"), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Gores* v. *Rosenthal,* 150 Conn. 554, 558, 192 A.2d 210 (1963) ("Arbitration may or may not be a desirable substitute for trials in courts . . . [b]ut when [the parties] have adopted it, they must be content with its informalities . . . . They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery." [Internal quotation marks omitted.]), quoting *American Almond Products Co.* v. *Consolidated Pecan Sales Co.,* 144 F.2d 448, 451 (2d Cir. 1944) (L. Hand, J.). If we were to adopt the dissent's expanded role of judicial review of arbitrators' conclusions of law or fact, we would eviscerate the very purpose of arbitration—efficient, economical and expeditious resolution of private disputes with limited judicial intrusion—and thereby render arbitration more akin to a full-blown judicial proceeding with its attendant increase in costs and time. See *Moncharsh* v. *Heily & Blase,* 3 Cal. 4th 1, 28, 832 P.2d 899, 10 Cal. Rptr. 2d 183 (1992) (review of arbitrator's errors of law or fact "would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers"). We decline to expand our scope of judicial review to an arbitrator's conclusions of law and fact.

The simple but essential distinction between this case and *Harty* is as follows. In *Harty,* the arbitrator

expressly lacked authority to award attorney's fees because they were precluded by the submission, which stated "the arbitrators are not authorized or entitled to include as part of any award . . . punitive damages . . . ." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 76. The award included attorney's fees, which, in Connecticut, are an element of punitive damages. Here, the arbitrator was authorized to award attorney's fees only if he found that Comprehensive prevailed on its restrictive covenant claim. Of course, implicit in that authorization is another, more fundamental authority granted to the arbitrator. The submission granted him the authority to decide whether Comprehensive prevailed. Regardless of whether his implicit conclusion that Comprehensive did not prevail was legally correct, it is undisputed that he had the authority to make the determination. Moreover, even if that determination was not legally correct, we do not have the authority to review an error of law. Id., 85. Accordingly, the arbitrator did not exceed his authority in concluding that Comprehensive did not prevail, and the award conformed to the submission in this case, whereas in *Harty* it did not.

The judgment is affirmed.

In this opinion NORCOTT, ZARELLA and QUINN, Js., concurred.

KATZ, J., with whom ROGERS, C. J., and PALMER, J., join, dissenting. The majority concludes that the arbitrator's decision refusing to award attorney's fees to the named plaintiff, Comprehensive Orthopaedics and Musculoskeletal Care, LLC,[1] is unreviewable because,

---

[1] See footnote 1 of the majority opinion for the listing of the individual plaintiffs involved in this appeal. References herein to those individuals and Comprehensive Orthopaedics and Musculoskeletal Care, LLC, jointly, are to the plaintiffs.

as long as the arbitrator rendered one of two possible awards—either awarding attorney's fees or not awarding attorney's fees—the award conformed to the submission. The majority reasons that the arbitrator implicitly decided that the named plaintiff had not prevailed, despite being awarded $75,000 in damages on the claim at issue, and that such a decision was within the arbitrator's sole discretion as a matter of contract interpretation. I respectfully disagree. When parties to an arbitration agreement use terms that have a well settled, universally understood, unambiguous meaning, they have not intended to open up those terms to interpretation by the arbitrator. Thus, when an arbitrator ignores the settled meaning of a term, the arbitrator has not engaged in a plausible interpretation of the contract and, in such a case, has exceeded his authority. In the present case, by ignoring the settled meaning of the term "prevail," the arbitrator disregarded mandatory language in the arbitration agreement clearly stating that he must award attorney's fees to a prevailing party and, as such, exceeded his authority. Accordingly, I respectfully dissent.

The resolution of the issue in this appeal is informed by our analysis in *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 881 A.2d 139 (2005). The arbitration agreement in *Harty* expressly precluded the arbitrator from awarding "punitive damages or amounts in the nature of . . . punitive damages . . . ." (Internal quotation marks omitted.) Id., 76. The relevant issues in *Harty*, for purposes of this appeal, were whether the arbitrator had exceeded his authority by awarding: (1) double damages under the wage collection statute, General Statutes § 31-72; and (2) attorney's fees. *Harty* v. *Cantor Fitzgerald & Co.*, supra, 88. In that case, as in the present case, there was no dispute that the submission was unrestricted, in the sense that it did not condi-

tion the award on court review.[2] Id., 83. We therefore explained that, "[i]n light of that posture . . . the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . . *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 110, 779 A.2d 737 (2001).

"Even with an unrestricted submission, however, it is well settled that the award may be reviewed to determine if the arbitrators exceeded their authority, one of the statutory grounds under [General Statutes] § 52-418 for vacating an award. *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, [273 Conn. 86, 94, 868 A.2d 47 (2005)]. We have explained that, [i]n our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . Id. The standard for reviewing a claim that the award does not conform to the submission requires what we have termed in effect, de novo judicial review. *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 789, 830 A.2d 729 (2003). . . . Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission. [Id., 790]; see also *In re Matter*

---

[2] We have used the term "unrestricted submission" in several ways, each of which has different legal implications. See *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 89 n.3, 868 A.2d 47 (2005) ("[a] submission is unrestricted when, as in the present case, the parties' arbitration agreement contains no language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review" [internal quotation marks omitted]).

*of Granite Worsted Mills, Inc.*, 25 N.Y.2d 451, 456, 255 N.E.2d 168, 306 N.Y.S.2d 934 (1969) (where it is clear from the face of the award itself . . . that the arbitrator has included an element of damages specifically excluded by the contract pursuant to which he obtained his very authority to act, he exceeds his powers under the contract and the award thus made must be vacated upon proper application). In making this determination, the court may not engage in fact-finding by providing an independent interpretation of the contract, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 3713*, 35 Conn. App. 804, 811, 647 A.2d 755 (1994) (concluding that trial court improperly granted plaintiff's application to vacate arbitration award because, in determining whether award conformed to submission, it provided an independent interpretation of contract and thus engaged in fact-finding beyond scope of trial court's powers of review); *Board of Education* v. *Local 818, Council 4, AFSCME, AFL-CIO*, 5 Conn. App. 636, 640, 502 A.2d 426 (1985) ([w]here one party claims that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement, the court will compare the agreement with the award to determine whether the arbitrator has ignored his obligation to interpret and apply that agreement as written), citing *Hudson Wire Co.* v. *Winsted Brass Workers Union*, 150 Conn. 546, 553, 191 A.2d 557 (1963)." (Citations omitted; internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 83–87.

In *Harty*, in deciding whether the arbitrator had exceeded his authority, we applied the following analytical framework. We first compared the award to the submission and noted the absence of any express reference in the award to "punitive" damages. Id., 91. We

therefore considered whether either double damages under § 31-72 or attorney's fees were, *as a matter of law*, punitive damages or in the nature of punitive damages, and, therefore, were outside the scope of the submission. Id., 92. We noted that, "[t]o justify vacating an award . . . we must determine that the award *necessarily* falls outside the scope of the submission." (Emphasis in original.) Id., 98. To make that determination, we examined, inter alia, case law from this and other jurisdictions addressing the meaning of the term punitive damages generally and the specific question of whether statutory multiple damages are punitive. Id., 92–97.

That examination yielded different results. With respect to the award of double damages under § 31-72, because the case law was ambiguous as to whether such damages are punitive, we concluded that the arbitrator was acting within the scope of his authority by interpreting the contract to permit an award of such damages. Id., 98. By contrast, the case law demonstrated that "attorney's fees and costs provide the same relief and serve the same function as would be afforded by common-law punitive damages. See *Berry* v. *Loiseau*, [223 Conn. 786, 827, 614 A.2d 414 (1992)] (attorney's fees are element of punitive damages); *Tedesco* v. *Maryland Casualty Co.*, [127 Conn. 533, 538, 18 A.2d 357 (1941)] (same)." *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 99–100. Therefore, we concluded that the law clearly demonstrated that the fees were punitive in nature, and, accordingly, the arbitrator had exceeded his authority by including those in the award. Id., 100.

The present case is the converse of *Harty*. Rather than *precluding* the arbitrator from including certain compensation in the award, the agreement *mandates* that the arbitrator include certain compensation in the award if a factual predicate is met, namely, that the

named plaintiff has prevailed on a specific claim. Applying the same analytical framework that we did in *Harty* to the present case yields the conclusion that the arbitrator exceeded his authority by declining to award attorney's fees.

I begin by comparing the arbitration agreement and the submission to the award. See *Administrative & Residual Employees Union* v. *State*, 200 Conn. 345, 348, 510 A.2d 989 (1986) ("[t]he arbitration agreement and the submission constitute the charter of the entire arbitration proceedings . . . and define the powers of the arbitrator and the issues to be decided" [citation omitted; internal quotation marks omitted]). In the arbitration agreement, the parties agreed to submit to binding arbitration "any and all issues or claims that they have against each other" and that "[t]he [a]rbitrator shall apply the laws of the [s]tate of Connecticut wherever applicable and relevant." In the section of the agreement titled "Expenses," the parties agreed as follows: "As to [§] 11 of the [e]mployment [a]greement [titled 'Restrictive Covenant'] . . . the [a]rbitrator shall award attorney's fees and costs only to [the named plaintiff] and only if [the named plaintiff] *prevails* in its claims under [§] 11 of the [e]mployment [a]greement." (Emphasis added.) The parties submitted the following issues to be decided by the arbitrator. The plaintiffs asked the arbitrator to decide: "Did [the named defendant, Alfredo L. Axtmayer[3]] violate [§] 11 of his '[e]mployment [a]greement'?" If the arbitrator decided that issue in the affirmative, the plaintiffs requested enforcement of the $150,000 liquidated damages clause in that section, as well as attorney's fees and costs. The named defendant asserted in his submission: "The [plaintiffs] are not entitled to payment under the restric-

---

[3] Alfredo L. Axtmayer, M.D., P.C., also was named as a defendant in the present case. We refer to Axtmayer individually as the named defendant, and to him and his professional corporation jointly as the defendants.

tive covenant." The arbitration award provides: "[The named defendant] is indebted to the [plaintiffs] for the following: [r]estrictive [c]ovenant and [l]iquidated [d]amages: $75,000. . . . No additional interest, costs or attorney's fees are awarded."

A comparison between the award and the submission reflects that, as in *Harty*, the arbitrator did not use the precise term at issue. In other words, the arbitrator did not state expressly that the named plaintiff had "prevailed" or "not prevailed" on its claims under § 11 of the employment agreement. As in *Harty*, therefore, we turn to our case law to determine whether a party that is awarded damages on a claim, even in an amount less than requested, has "prevailed" on that claim.

The Appellate Court aptly has summarized the law on this question in the context of discretionary awards of attorney's fees to prevailing parties: "Our Supreme Court and this court, in construing various statutory fee shifting provisions, *repeatedly* have cited favorably the following definition of a prevailing party: [A] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . . *Frillici* v. *Westport*, 264 Conn. 266, 285, 823 A.2d 1172 (2003); *Wallerstein* v. *Stew Leonard's Dairy*, [258 Conn. 299, 303, 780 A.2d 916 (2001)]; *Right* v. *Breen*, 88 Conn. App. 583, 591, 870 A.2d 1131 [(2005), rev'd on other grounds, 277 Conn. 364, 890 A.2d 1287 (2006)]; see also *Wallerstein* v. *Stew Leonard's Dairy*, supra, 304 (prevailing party is a legal term of art . . . [referring to] one who has been awarded some relief by the court . . .). Generally, costs may be awarded to a successful party-plaintiff as the prevailing party where there is success on the merits of the case although not to the extent of the plaintiff's original contention, or where the plaintiff is not awarded the entire claim. A party need not prevail on all issues to justify a full award of costs, and it has been held that if the prevailing party obtains judgment

on even a fraction of the claims advanced, or is awarded only nominal damages, the party may nevertheless be regarded as the prevailing party and thus entitled to an award of costs. 20 Am. Jur. 2d, Costs § 14 (1995)." (Emphasis added; internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 630–31, 882 A.2d 98, certs. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). This case law is wholly in accord both with the common meaning of the term "prevail"; see Webster's Third New International Dictionary (defining "prevail" as "to gain victory by virtue of strength or superiority" and "to urge one successfully: succeed in persuading or inducing one"); and with the legal definition; see Black's Law Dictionary (7th Ed. 1999) (defining "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . [a]lso termed 'successful party' "); Ballentine's Law Dictionary (3d Ed. 1969) (defining prevailing party as "[t]he party who is successful or partially successful in an action, so as to be entitled to costs"). As this foregoing discussion clearly demonstrates, whether one looks to the common meaning of a prevailing party to an action, or to the legal definition, treatises or case law, an award of damages to a party on a claim, even if only nominal, means that he has prevailed on that claim.[4]

The parties in this case undoubtedly vested the arbitrator with authority to decide whether the named defendant had violated the restrictive covenant and, if so, the amount of damages the plaintiffs were entitled to recover for that breach. Indeed, the defendants had asked the arbitrator to conclude that the plaintiffs were entitled to *no* payment. Accordingly, the arbitrator's legal and interpretive functions, consistent with the parties' submissions, were completed upon reaching those

---

[4] It is wholly irrelevant that the arbitrator reformed the agreement to reduce the liquidated damages provision. The arbitrator did not strike either the restrictive covenant or the liquidated damages clause as unenforceable.

conclusions. The parties had set forth the conditions for payment of attorney's fees by using terms they undoubtedly understood consistently with their common, well established meaning. Thus, in this case, the arbitrator, a fortiori, by virtue of its order for the defendants to pay damages to the plaintiffs, determined that the named plaintiff had prevailed on its claim that the named defendant had violated the restrictive covenant included in § 11 of the employment agreement.

Although the trial court concluded that the arbitrator could have viewed the term prevail as ambiguous because, by virtue of receiving only 50 percent of the liquidated damages sought, the plaintiffs' proverbial glass was either "half full" or "half empty," neither the defendants nor the trial court has cited a single source to support that interpretation. In light of the clearly contrary meaning of prevailing party, that interpretation is not merely an incorrect one; it is implausible that the parties intended such an interpretation. See *Kashner Davidson Securities Corp.* v. *Mscisz*, 531 F.3d 68, 78 (1st Cir. 2008) ("With respect to the authority to interpret, the [arbitration] [p]anel's disregard of the unambiguous text of a [National Association of Securities Dealers] [c]ode provision cannot be deemed a mere interpretation. To find otherwise and expand the concept of 'interpretation' to include the [p]anel's dismissal decision in this case would be tantamount to giving . . . arbitration panels a blank check to [act] in contravention of an explicit provision of the [c]ode. Our deference to the decisions of arbitrators does not extend that far."). It is a well settled principle of arbitration law that, "[a]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining

agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. *United Steelworkers of America* v. *Enterprise Wheel & Car Corporation*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 [1960]." (Internal quotation marks omitted.) *Board of Education* v. *AFSCME, Council 4, Local 287*, 195 Conn. 266, 273, 487 A.2d 553 (1985). An award must be reversed when it is "inherently inconsistent with the underlying collective bargaining agreement"; *Board of Education* v. *Local 818, Council 4, AFSCME, AFL-CIO*, supra, 5 Conn. App. 640; "contrary to the plain language of the [contract]"; [internal quotation marks omitted] *Eastern Seaboard Construction Co.* v. *Gray Construction, Inc.*, 553 F.3d 1, 4 (1st Cir. 2008); "not on its face . . . a plausible interpretation of the contract"; (internal quotation marks omitted) *Virginia Mason Hospital* v. *Washington State Nurses Assn.*, 511 F.3d 908, 914 (9th Cir. 2007); or the decision is "so ignorant of the contract's plain language as to make implausible any contention that the arbitrator was construing the contract." (Internal quotation marks omitted.) *Totes Isotoner Corp.* v. *International Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 412 (6th Cir. 2008). This is such a case given the well established meaning of the term at issue.

As another jurisdiction has noted: "Here, the parties' agreement mandates the arbitrator to award attorney fees and expenses to the prevailing party. It leaves no discretion to the arbitrator to deny attorney fees to the prevailing party. In ruling on [the plaintiff's] motion to modify, the arbitrator ignored the parties' agreement and fashioned his own rule that no prevailing party attorney fees will be awarded if any fault is attributable to each of the parties. The arbitrator's ruling is contrary to the parties agreement, it exceeds the arbitrator's power, and the award may be properly vacated . . . ."

*Sooner Builders & Investments, Inc.* v. *Nolan Hatcher Construction Services, LLC*, 164 P.3d 1063, 1071–1072 (Okla. 2007);[5] accord *Bernard* v. *Kuhn*, 65 Md. App. 557, 565–66, 501 A.2d 480 (1985) (Agreeing with the following reasoning of the Washington Court of Appeals: "The attorney's fees clause stated that if either party undertook arbitration then the prevailing party shall be entitled to reasonable attorney's fees. We do not believe that this language, agreed to by both parties *prior* to arbitration, gave the arbitrators discretion with regard to attorney's fees except for the amount of the award . . . . The question of whether or not attorney's fees should be awarded to the prevailing party was not an issue submitted to the tribunal for arbitration with the other claims and disputes; having already been decided by the parties by agreement, it was not arbitrable. To hold otherwise would require us to ignore the express language of a contract, something that courts may not do."[6] [Emphasis in original; internal quotation

---

[5] The agreement at issue in *Sooner Builders & Investments, Inc.* v. *Nolan Hatcher Construction Services, LLC*, supra, 164 P.3d 1068, provided: "Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof . . . the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges and expenses expended or incurred therein." (Internal quotation marks omitted.)

[6] The agreement at issue in *Bernard* v. *Kuhn*, supra, 65 Md. App. 560, provided: "The cost of said arbitration, including all reasonable attorney's fees and other proper expenses incident thereto incurred by the winning party, will be borne by the losing party relative to said arbitration, and this fact will be reflected in the arbitrator's decision." (Internal quotation marks omitted.) In that case, the Maryland Court of Special Appeals relied on the reasoning of the Washington Court of Appeals decision in *Agnew* v. *Lacey Co-Ply*, 33 Wash. App. 283, 654 P.2d 712 (1982), cert. denied, 99 Wash. 2d 1006 (1983). See *Bernard* v. *Kuhn*, supra, 565. Although, the Washington Court of Appeals recently has questioned the reasoning in *Agnew*; see *Morrell* v. *Wedbush Morgan Securities, Inc.*, 143 Wash. App. 473, 178 P.3d 387 (2008); the Maryland courts have reiterated their view that an arbitrator acts outside the scope of his authority by failing to comply with a mandatory provision for attorney's fees to a prevailing party. See *Marsh* v. *Loffler Housing Corp.*, 102 Md. App. 116, 132, 648 A.2d 1081 (1994) (stating that "[t]he issue of [attorney's] fees . . . was not disputed, and therefore not arbitrable" and citing in support thereof *Bernard* and *Agnew*).

marks omitted.]); *In re Matter of Application of Shapiro*, 197 Misc. 241, 245, 97 N.Y.S.2d 644 (1949) ("Under the provisions of the agreement, the fees and expenses of the arbitrators were required to be imposed on the unsuccessful party. The arbitrators had no power under the agreement to apportion the amount of those fees among the parties as they have undertaken to do.");[7] but see *DiMarco* v. *Chaney*, 31 Cal. App. 4th 1809, 1815, 37 Cal. Rptr. 2d 558 (1995) ("Had the arbitrator found neither [the plaintiff] nor [the defendant] was the prevailing party, the arbitrator properly could have declined to make any award of [attorney's] fees. But having made a finding [the defendant] was the prevailing party, the arbitrator was compelled by the terms of the agreement to award her reasonable [attorney's] fees and costs."); *Morrell* v. *Wedbush Morgan Securities, Inc.*, 143 Wash. App. 473, 487, 178 P.3d 387 (2008) ("[T]he award of [attorney's] fees was included as a contract issue. Thus, the arbitrators had the power to decide the [attorney's] fees issue, even if they did so wrongly.").

The arbitrator in the present case had complete discretion to decide whether, under the facts and the terms of the contract, the named defendant had violated the restrictive covenant. Once the arbitrator determined, however, that the named defendant had violated the covenant and thus the plaintiffs were entitled to recover damages for that breach, the right to attorney's fees was not a matter of discretion or contract interpretation.

Accordingly, I respectfully dissent.

---

[7] *In re Matter of Application of Shapiro* does not indicate the language of the attorney's fees clause at issue.