TEAMSTERS LOCAL UNION NO. 677 *v.* BOARD OF
EDUCATION OF THE CITY OF DANBURY
(AC 31314)

Bishop, Beach and West, Js.

Argued April 6—officially released July 20, 2010

*John T. Fussell,* for the appellant (plaintiff).

*Peter J. Murphy,* with whom, on the brief, was *Thomas B. Mooney,* for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Teamsters Local Union No. 677, appeals from the judgment of the trial court denying its application to vacate an arbitration award in which the arbitrator found in favor of the defendant, the board of education of the city of Danbury. The plaintiff claims that the court should have vacated the award on the basis that the arbitrator exceeded his authority in determining that the defendant terminated the employment of Patricia Russo in accordance with the provisions of the parties' collective bargaining

agreement (agreement). We affirm the judgment of the trial court.

The record reveals the following undisputed material facts and procedural history. As of February, 2008, Russo had been employed by the defendant as a school lunch program worker for approximately twelve years, and her job sometimes required heavy lifting. The terms and conditions of Russo's employment were governed by the agreement.

On February 25, 2008, Russo, with her arm in a full-length cast, presented to her supervisor at the school a work status certificate from a physician that indicated: "Patient is to be off due to pending surgery and long arm cast. . . . Estimated return to work is [four] weeks after surgery." This statement to the defendant also contained the notation "Work Status: Off." The defendant accepted this certificate and, pursuant to the terms of the agreement, placed her on paid sick leave while she awaited surgery and the subsequent period of recovery.

For several years, Russo also had been employed by H&R Block during the afternoon and evening hours, after her shift at the school. Her job at H&R Block involved light clerical work without heavy lifting. Because Russo's cast did not impede her work at H&R Block, Russo continued to work at that job while on paid sick leave from her employment at the school.

On April 2, 2008, Russo was terminated from her employment with the school when the defendant discovered that she was working at H&R Block while on paid sick leave from her school job. The stated reason for the termination was that Russo was "engag[ed] in gainful employment while being on a [sick leave] with the Danbury Public Schools. This dismissal is for just cause and is in accordance with the principles of progressive discipline."

Russo filed a grievance, which was denied, and the dispute was submitted to arbitration. The parties submitted the following issue to the arbitrator: "Was . . . Russo terminated for just cause in accordance with Article VIII (D) (1) of the . . . agreement? If not, what shall the remedy be?"[1] The arbitrator concluded that Russo had been discharged in accordance with article VIII (D) (1) of the agreement and sustained the termination.

On December 24, 2008, the plaintiff filed an application with the Superior Court to vacate the arbitrator's award pursuant to General Statutes § 52-418 (a) (4)[2] premised on the claim that the arbitrator exceeded his authority by sustaining the termination on grounds that had no basis in the agreement, namely, that Russo had an obligation to inquire whether light duty work at the school was available to her and that he failed to apply the principles of progressive discipline.[3] The court concluded that the submission to arbitration was

[1] Article VIII (D) (1) provides: "The [e]mployer may discharge employees for any offense that the [e]mployer deems of sufficient seriousness to warrant discharge, provided that all such discharges shall be for just cause and in accordance with the principles of progressive discipline."

[2] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] The plaintiff also sought to vacate the award pursuant to § 52-418 (a) (3) on the ground that the arbitrator was guilty of misconduct because his reference to Russo's actions as "fraud" did not arise until the hearing, and the plaintiff, therefore, did not have an opportunity to defend against them. The court rejected this argument on the ground that the arbitrator's reference

unrestricted and, therefore, limited its inquiry to whether the award conformed to the submission. The court answered that question in the affirmative and, therefore, determined that the arbitrator had not exceeded his authority. Accordingly, the court denied the plaintiff's application to vacate. This appeal followed.

On appeal, the plaintiff claims that the court improperly denied its application to vacate the award because the arbitrator exceeded his authority in issuing an award that is inconsistent with the agreement. Specifically, the plaintiff claims that the award violates Russo's "contractual rights to paid sick leave and to progressive discipline."[4] We are unpersuaded.

Before addressing the plaintiff's claims on appeal, we set forth the well established principles that guide our review of an arbitration award that is based on an unrestricted submission.[5] "Judicial review of arbitral

to Russo's behavior as fraud was a legal conclusion and that the plaintiff was well aware of the conduct that resulted in the termination of employment. Thus, the court concluded: "Re-casting the same allegations as were alleged to be violative of § 52-418 (a) (4) as a violation of § 52-418 (a) (3) fails to demonstrate a deprivation of a full and fair hearing under these circumstances." The court also rejected the plaintiff's claims that the award was untimely and was in inconsistent form. The plaintiff has not challenged those determinations on appeal.

[4] Article VII, § 2, of the agreement governs earned sick pay and provides: "(a) Leave for personal illness shall be fifteen (15) days per year cumulative to ninety (90) days for all [e]mployees, provided however that [e]mployees who accumulated unused sick leave in excess of ninety (90) days prior to the effective date of this agreement will be permitted to use the accumulated leave but may not accumulate additional sick leave.

"(b) Sick leave shall be earned at the rate of one and one-half (1 1/2) days per month.

"(c) Sick leave pay will be based on each [e]mployee's daily rate of pay.

"(d) At the option of the Board or the Superintendent, a physician's excuse may be required of any employee after four (4) consecutive days of sick leave. The Board also may require an examination of any [e]mployee by a physician hired by the Board."

[5] It is undisputed that the submission to the arbitrator was unrestricted in this case. "A submission is unrestricted when . . . the parties' arbitration agreement contains no language restricting the breadth of issues, reserving

decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . . [Section] 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers

explicit rights, or conditioning the award on court review." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 89 n.3, 868 A.2d 47 (2005).

or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005). "The standard for reviewing a claim that the award does not conform to the submission requires what we have termed 'in effect, de novo judicial review.'" Id., 84. "Although we have not explained precisely what in effect, de novo judicial review entails as applied to a claim that the award does not conform with the submission, that standard best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. Our review is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred." Id., 85.

"In determining whether an arbitrator has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue, not whether that issue was correctly decided. Consequently, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator's decision cannot be overturned even if the court is convinced that the arbitrator committed serious error." (Internal quotation

marks omitted.) Id., 86 n.7, quoting 1 M. Domke, Commercial Arbitration (3d Ed. 2003) § 39:6, pp. 39-12 through 39-13. Moreover, "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 88–89.

In this case, the plaintiff concedes that the award conforms to the submission. The plaintiff argues, nevertheless, that the award must be vacated because it is inconsistent with Russo's contractual rights to paid sick leave and to progressive discipline. In support of its claim, the plaintiff asserts that this court should engage in a broader scope of review, and, rather than limit our review to the examination of the award and the submission, we should "compare the agreement with the award to determine whether the arbitrator has ignored his obligation to interpret and apply that agreement as written." *Board of Education* v. *Local 818*, 5 Conn. App. 636, 640, 502 A.2d 426 (1985). "This additional analysis is conducted pursuant to such a claim because an arbitrator's award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of this award. . . . If, for example, there was evidence that revealed that [the arbitrator] had reached his decision by consulting a ouija board, [it would] not suffice that the award conformed to the submission. . . . It must be emphasized, however, that merely claiming inconsistency between the agreement and the award will not trigger judicial examination of the merits of the arbitration

award. Rather, in the face of such a claimed inconsistency, this court will review the award only to determine whether it draws its essence from the collective bargaining agreement." (Citations omitted; internal quotation marks omitted.) Id. We will not, however, employ a broader standard of review simply as an alternative means for determining whether the arbitrator correctly decided the issues that were submitted to arbitration. See *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 760–62, 980 A.2d 297 (2009).

Here, the record does not support the plaintiff's claim that the arbitrator disregarded Russo's contractual right to paid sick leave. Rather, the arbitrator concluded that Russo had engaged in serious misconduct for which termination of employment was deemed appropriate because she received the employer approved, contractually earned sick time pay while she continued to work in her concurrent employment at H&R Block and did so without informing the defendant. A fair reading of the arbitrator's decision reflects that he concluded that Russo's representation to the defendant that her work status was "off" was tantamount to a representation that she was disabled from work. In light of her concomitant employment with H&R Block, the arbitrator found this representation to be deceitful if not fraudulent. Although Russo's employment at H&R Block did not involve heavy lifting as was required in her job at the school, the arbitrator faulted Russo for not inquiring of the defendant whether light duty was available, particularly when she knew that another lunch program worker was performing light duty work. Although the agreement did not impose on Russo any explicit obligation to request light duty or to tell the defendant that she was going to continue working at another job, the arbitrator found that Russo violated the "spirit" of the

rules governing paid sick leave, and whether "character-ized as negligent misrepresentation or fraud," she had a duty to be honest with the defendant. The arbitrator concluded, as well, that Russo, as a supervisor, "had notice that her conduct was at the very least reprehensi-ble."[6] Thus, although the arbitrator acknowledged that Russo had a contractual right to paid sick leave, he essentially concluded that such a right is not unbounded and that Russo's behavior, namely her dishonesty, negated that right. See *Local 391, Council 4, AFSCME* v. *Dept. of Correction*, 76 Conn. App. 15, 19, 817 A.2d 1279 (2003) ("Merely because an arbitral decision is not based on the express terms of a collective bargaining agreement does not mean that it is not properly derived from the agreement. An arbitrator is entitled to take cognizance of contract principles and draw on them for guidance in construing an agreement." [Internal quo-tation marks omitted.]). So long as the record demon-strates, as it does, that the arbitrator applied and interpreted the contract, even if mistakenly, it is not our role on review to determine whether he did so without flaw.

The plaintiff also claims that the arbitrator exceeded his authority in concluding that Russo's conduct was so serious that "progressive discipline was not meri-ted." As noted, an applicable section of the agreement provides that an employee's termination shall be in accordance with progressive discipline. Generally, pro-gressive discipline contemplates a discipline procedure that begins with a mild sanction and increases in sever-ity, with an aim toward correcting the employee's behavior, until culminating in the discharge of the employee. However, "[s]ummary discharge in lieu of corrective discipline of the employee is deemed appro-priate for very serious offenses." F. Elkouri & E.

---

[6] Indeed, the plaintiff acknowledged at oral argument that there exists a mutual duty of honesty in the employer-employee relationship.

Elkouri, How Arbitration Works (A. Ruben ed., 6th Ed. 2003) c. 15, p. 965. Although another fact finder, or we, on review, may not agree with the arbitrator's characterization of Russo's behavior as so serious that it did not warrant progressive discipline, it is clear that in considering the question of progressive discipline, the arbitrator was interpreting and applying the terms of the agreement to Russo's conduct as he perceived it and in light of his understanding of the principles of progressive discipline.[7] Thus, the award is not the innovation of a maverick. Rather, it plainly drew its essence from the agreement.[8]

It is, of course, irrelevant whether we would reach the same conclusion as the arbitrator or even whether the arbitrator correctly interpreted the agreement. *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 86 n.7. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator's decision cannot be overturned even if the court is convinced that the arbitrator committed serious error." (Internal quotation marks omitted.) *Comprehensive Orthopaedics & Musculoskeletal Care,*

---

[7] The arbitrator noted various disciplinary problems that the defendant had with Russo over the eighteen months preceding the termination of her employment. For these problems, Russo had been made subject to progressive discipline, starting with warnings and leading to a suspension due to go into effect when she presented her medical certificate to the defendant.

[8] The plaintiff conceded at oral argument before this court that if Russo had been discharged for theft or for striking a person over the head with a shovel, there would be no basis for appeal because the arbitrator properly would have determined that the offense was sufficiently serious to justify a discharge. Our question, however, is not whether the arbitrator made a proper determination of the relative seriousness of Russo's conduct. Because it is not our role to second-guess the legal or factual conclusions of the arbitrator, we cannot question his determination that Russo's offense was so serious that progressive discipline was not required. Rather, our inquiry in this regard is limited to the question of whether he considered the principles of progressive discipline as they related to the situation he confronted.

*LLC* v. *Axtmayer,* supra, 293 Conn. 755. Accordingly, because we cannot conclude that the arbitrator exceeded his authority, the court correctly declined to vacate the award.

The judgment is affirmed.

In this opinion BEACH, J., concurred.

WEST, J., dissenting. I respectfully disagree with the majority's conclusion that the record does not support Patricia Russo's claim that the arbitrator, in finding that the defendant, the board of education of the city of Danbury (board), terminated her employment in accordance with the parties' collective bargaining agreement (agreement), disregarded her contractual rights under that agreement. On the contrary, and on the basis of my review of the record before this court, I conclude that the arbitrator abrogated her contractual right to paid sick leave under the agreement by placing the onus on Russo to seek out "light duty" work from the board.[1] Because that action amounted to the arbitrator modifying the agreement, I would reverse the judgment of the trial court and remand this case with direction to vacate the arbitrator's award. Accordingly, I respectfully dissent.

Initially, I note that I agree with the majority's explication of the established principles that guide the review of an arbitration award that is based on an unrestricted submission. I, however, find it necessary to underscore that " '[a]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he

---

[1] The arbitrator also concluded that Russo's behavior was so serious that it did not warrant progressive discipline. Because I conclude that the arbitrator exceeded his authority by modifying the agreement to include an obligation placed on Russo to seek out an accommodation, I also conclude that her actions did not constitute an offense at all. Therefore, she should have been subjected to no discipline, and I need not discuss further the arbitrator's conclusions in that regard.

does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.' . . . *Hudson Wire Co.* v. *Winsted Brass Workers Union*, 150 Conn. 546, 553, 191 A.2d 557 (1963)." *Local 391, Council 4, AFSCME* v. *Dept. of Correction*, 76 Conn. App. 15, 19, 817 A.2d 1279 (2003). Likewise, I agree that "[m]erely because an arbitral decision is not based on the express terms of a collective bargaining agreement does not mean that it is not properly derived from the agreement. An arbitrator is entitled to take cognizance of contract principles and draw on them for guidance in construing an agreement. . . . Neither a misapplication of principles of contractual interpretation nor an erroneous interpretation of the agreement in question constitutes grounds for vacatur." (Internal quotation marks omitted.) Id., 18–19.

Here, the arbitrator concluded that Russo had "violated the letter and spirit of the sick leave provisions" in the agreement. That was so, the arbitrator concluded, because Russo, in her "position of heightened knowledge" that resulted from her supervisory role, "knew, or should have known, that an accommodation [for] her limitations was possible." Therefore, he reasoned, Russo had a responsibility under the sick leave provisions to come forward and to seek an accommodation for her injuries or, at the very least, to clarify the matter with her supervisor. It seems to me, however, that in so doing, the arbitrator placed on Russo obligations, apparently cut from whole cloth, that the agreement did not expressly or implicitly impose. My review of the agreement reveals that there is no provision in it requiring an employee to seek out "light duty," nor, I

believe, can one reasonably be implied through contract interpretation. As such, I conclude that the arbitrator's decision clearly was not properly derived from that agreement.[2] Essentially, the arbitrator, by adding terms to the agreement, did not engage in a plausible interpretation of the contract and, thereby, exceeded his powers such that a mutual, final and definite award was not made. See General Statutes § 52-418 (a) (4); footnote 2 of the majority opinion; *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 951 A.2d 1249 (2008); cf. *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 763, 980 A.2d 297 (2009) (*Katz, J.*, dissenting) ("When parties to an arbitration agreement use terms that have a well settled, universally understood, unambiguous meaning, they have not intended to open up those terms to interpretation by the arbitrator. Thus, when an arbitrator ignores the settled meaning of a term, the arbitrator has not engaged in a plausible interpretation of the contract and, in such a case, has exceeded his authority.").

Because the arbitrator's memorandum of decision manifests his infidelity to his obligation to issue an award that draws its essence from the agreement by, essentially, modifying the provisions of the agreement, I conclude that the arbitrator exceeded his powers within the meaning of § 52-418 (a) (4) and dispensed his own brand of industrial justice. See *Local 391, Council 4, AFSCME* v. *Dept. of Correction*, supra, 76 Conn. App. 19. I, therefore, respectfully dissent.

---

[2] See R. Gorman & M. Finkin, Basic Text on Labor Law, Unionization and Collective Bargaining (2d Ed. 2004) § 25.3, p. 825 ("[i]f the arbitrator's decision is based on 'subjective notions of a fair labor contract' not reasonably anchored in the contract itself, or on 'some body of thought, or feeling, or policy, or law that is outside the contract [and not incorporated in it by reference],' a court may well vacate the award"), quoting *Harry Hoffman Printing, Inc.* v. *Graphic Communications International Union, Local 261*, 950 F.2d 95, 98, 100 (2d Cir. 1991).