TOWN OF NORTH BRANFORD *v.* DANIEL
POND ET AL.
(AC 33029)

DiPentima, C. J., and Beach and Sheldon, Js.

Argued November 29, 2011—officially released March 6, 2012

*John M. Gesmonde,* town attorney, for the appellant (plaintiff).

*J. William Gagne, Jr.,* with whom, on the brief, was *Kimberly A. Cuneo,* for the appellees (defendants).

*Opinion*

SHELDON, J. In this arbitration case, the plaintiff, the town of North Branford, appeals from the judgment of the trial court denying its application to vacate an arbitration award entered by an arbitration panel (panel) in favor of the defendant union, AFSCME, Local 1303-18, Council 4 (union), which filed a grievance on behalf of the defendant town employee, Daniel Pond. The award overturned, for lack of just cause under the parties' collective bargaining agreement (agreement), the plaintiff's dismissal of Pond from his safety sensitive position as a town highwayman after his second failure of a town mandated drug test. It ordered, instead, that Pond be suspended from his position without pay or benefits until such time as he took and successfully passed another drug test. The plaintiff claims on appeal that the court erred in denying its application to vacate by incorrectly finding that the award neither violated public policy nor contravened one or more of the statutory proscriptions of General Statutes § 52-418 (a). We disagree and affirm the judgment of the trial court.

The following factual and procedural history, as found by the trial court, is relevant to the issues on appeal. "The defendant . . . Pond, was employed as a department of public works highwayman by the plaintiff . . . . As a safety sensitive transportation employee, Pond was required to undergo periodic random drug testing pursuant to federal mandate. On February 15, 2008, Pond failed a drug test due to his inability to

produce an acceptable urine sample within a three hour period. Pond subsequently passed nine drug tests. On March 18, 2009, Pond was ordered to take yet another drug test. Pond was unable to produce an acceptable sample upon arriving at the test facility. Pond was placed in a waiting room and allegedly instructed to drink water and remain in the area. The procedures for the testing facility required that any person leaving the waiting area during the testing process would be cited as having failed the test. Pond was away from the waiting area at the time he was called to take his test and was, thus, cited with a failure. Having failed two drug tests . . . Pond [was terminated by the plaintiff] pursuant to its drug and alcohol policy.[1]

"Thereafter, Pond filed a union grievance, and the matter proceeded to arbitration pursuant to the collective bargaining agreement . . . between [the plaintiff] and [the union]. The submission presented to the arbitrators was: 'Did the [t]own of North Branford terminate Daniel Pond for just cause consistent with the contract? If not, what shall the remedy be?' On January 12, 2010, a three member arbitration panel ruled in Pond's favor, finding that [the plaintiff] did not have just cause to terminate Pond. The arbitrators' award directed Pond 'to take and successfully pass a drug test at [the plaintiff's] expense in order to return to work. Until he passes said test and is returned to work, no pay or benefits are due [him].' "

On February 11, 2010, the plaintiff filed with the Superior Court an application to vacate the arbitration award, claiming that the award violated public policy and contravened one or more of the statutory proscriptions of § 52-418 (a). Both parties filed memoranda in support of their respective positions, the plaintiff also

---

[1] The defendants do not dispute that the failure to present for a drug test or the refusal to take a drug test may be considered a failed test.

submitted exhibits, and the court heard argument by the parties. Subsequently, on December 9, 2010, the court issued a memorandum of decision denying the application to vacate. This appeal followed.

"Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The significance . . . of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide.

The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision.
. . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005). We "review de novo the question of whether any of those exceptions apply to a given award." (Internal quotation marks omitted.) *Board of Education* v. *Local R1-126, National Assn. of Government Employees*, 108 Conn. App. 35, 40, 947 A.2d 371 (2008). Here, to reiterate, the plaintiff claims that the panel's award in response to the unrestricted submission in this case[2] violated public policy and contravened one or more of the statutory proscriptions of § 52-418. We will address each claim in turn.

---

[2] At one point in its argument to this court, the plaintiff suggested that the present submission was restricted because of the manner in which it posed the threshold question to the arbitrator: "Did the [t]own of North Branford terminate Daniel Pond for just cause consistent with the contract?" The implication of this argument was that, by asking if the termination was for just cause "consistent with the contract," the submission specifically constrained the panel to give effect to the provisions of the contract in defining and applying to this case the standard of just cause. We disagree. When a submission to an arbitration panel requires the panel to determine if a standard set forth in the parties' agreement has been met, it is axiomatic that the arbitrators must construe and apply that provision in accordance with the entire agreement, as they interpret it. Just as their arbitral authority arises only from the agreement, so too must the limits of that authority derive their essence from the agreement. Accordingly, words in a submission confirming that the matter at issue must be determined in a manner consistent with the contract neither add to nor subtract from arbitral authority and, therefore, cannot be construed to restrict an otherwise unrestricted submission.

## I

The plaintiff claims initially that the challenged award violated public policy. Specifically, it argues that, by overturning its decision to terminate Pond's employment after his second failure of a town mandated drug test, the award violated the well defined public policy of the Federal Highway Administration (FHWA) concerning the testing of transportation employees in safety sensitive positions for drug use in the workplace. Under that policy, as embodied in federal regulations promulgated by the FHWA pursuant to the Omnibus Transportation Employee Testing Act of 1991 (act),[3] all employers of transportation workers in safety sensitive positions are required to test such employees for drug use and encouraged to impose strict discipline on those who fail such tests, subject only to limitations agreed to in applicable collective bargaining agreements. Here, because the plaintiff's drug and alcohol policy, which was adopted for the purpose of implementing the FHWA regulations, specifically authorizes the termination of any employee in a safety sensitive position who fails a second town mandated drug test, the plaintiff claims that the panel's decision to overturn Pond's dismissal, where the imposition of such discipline was not specifically prohibited by the parties' agreement, violated the public policy of the FHWA regulations. We are not persuaded.

"A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . .

---

[3] In compliance with the requirements of the act, the FHWA adopted regulations, 49 C.F.R. § 382, requiring employers to test employees with commercial driver's licenses for the use of alcohol and controlled substances. As required, the plaintiff's policy implements these federal regulations.

When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . .

"A two-step analysis . . . [is] often employed [in] deciding cases such as this. First, the court determines whether an explicit, well-defined and dominant public policy can be identified. If so, the court then decides if the arbitrator's award violated the public policy. . . . We note that [t]he party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail . . . only if it demonstrates that the [arbitrators'] award clearly violates an established public policy mandate. . . . It bears emphasizing, moreover, that implicit in the stringent and narrow confines of this exception to the rule of deference to arbitrators' determinations, is the notion that the exception must not be interpreted so broadly as to swallow the rule." (Citation omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 835–36, 6 A.3d 1142 (2010).

In rejecting the plaintiff's public policy challenge to the panel's award, the trial court relied principally on the United States Supreme Court's rejection of a similar challenge in *Eastern Associated Coal Corp.* v. *United*

*Mine Workers of America, District 17,* 531 U.S. 57, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000). In *Eastern Associated Coal Corp.,* the plaintiff employer sought to vacate an arbitration award reinstating a highway worker who had twice tested positive for marijuana in employer mandated random drug tests. Id., 59. In support of its challenge, the employer relied on the same FHWA regulations on which the plaintiff relies in this case. In discussing those regulations, the Supreme Court observed that they "embody several relevant policies. They . . . include [a] polic[y] against drug use by employees in safety-sensitive transportation positions and in favor of drug testing. [However, t]hey also include a . . . policy favoring rehabilitation of employees who use drugs. And the relevant statutory and regulatory provisions must be read in light of background labor law policy that favors determination of disciplinary questions through arbitration when chosen as a result of labor-management negotiation." Id., 65. So stating, the Supreme Court determined that the challenged award, which prescribed treatment for the employee as a condition of his reinstatement, did not "condone [the employee's] conduct or ignore the risk to public safety that drug use by truck drivers may pose." Id. Accordingly, it rejected the employer's public policy challenge to the panel's award as follows: "We recognize that reasonable people can differ as to whether reinstatement or discharge is the more appropriate remedy here. But both employer and union have agreed to entrust this remedial decision to an arbitrator. We cannot find in the Act, the regulations, or any other law or legal precedent an explicit, well defined, dominant public policy to which the arbitrator's decision runs contrary." (Internal quotation marks omitted.) Id., 67.

Consistent with the logic of *Eastern Associated Coal Corp.,* the trial court here concluded that the panel's decision to overturn Pond's termination of employment

for a second failed drug test and, instead, to suspend him, without pay or benefits, until he passed another drug test, did not violate any well defined and dominant public policy embodied in the FHWA regulations, the act under which they were promulgated, or other law. If, in the Supreme Court's view, termination was not required by public policy for a highway worker in a safety sensitive position, who had twice tested positive for marijuana, then termination was not required by public policy for Pond, whose two test failures were only "technical," in the sense that they were based on alleged failures by him to comply with testing procedures rather than proof that he had actually used illegal drugs. We agree with the trial court that, in light of the Supreme Court's decision in *Eastern Associated Coal Corp.*, the award here challenged—which promoted public safety by removing Pond from his safety sensitive position as a highway worker, without pay or benefits, until such time as he took and successfully passed another drug test—cannot be determined to have violated any well defined and dominant public policy embodied in the act, FHWA regulations or any other law or legal precedent. Accordingly, we conclude that the trial court did not err in rejecting the plaintiff's public policy challenge to the panel's award when denying its application to vacate.

II

The plaintiff next claims that the panel's award contravened the proscriptions of § 52-418 (a)[4] in two discrete and different ways. First, it claims that the panel

---

[4] General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient

exceeded its powers in issuing the award, in violation of the first clause of § 52-418 (a) (4), because it failed, in so doing, to conform its finding of no just cause to terminate Pond's employment to the parties' submission. The submission, to reiterate, required it initially to determine if Pond had been dismissed "for just cause consistent with the contract." The plaintiff claims, in particular, that the panel failed to consider the impact of article XIV of the parties' agreement on its asserted right thereunder to enforce its own drug policy, for that article assertedly reserved to the plaintiff the exclusive right to enforce its own policies, practices, procedures and regulations with respect to its employees, without interference by the employees or their union, except as specifically provided in the agreement. The plaintiff claims that the panel's decision here to overturn Pond's dismissal was inconsistent with the contract because the contract did not specifically authorize any interference with its exclusive right to enforce its own drug policy.

The plaintiff also claims that the award violated the second clause of § 52-418 (a) (4) because the panel, in issuing it, so imperfectly executed its powers by not prescribing a remedy for Pond's unjustified termination that was sufficiently final and definite to be enforced without further proceedings to clarify its true meaning. The plaintiff claims, in particular, that Pond's suspension, without pay or benefits, until he took and successfully passed another drug test, was not sufficiently final or definite to be upheld because it failed to establish when, where or by what method Pond was to be tested

cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

before he could return to duty. For the following reasons, we disagree with both of the plaintiff's statutory claims.

## A

We begin by setting forth the law governing claims that arbitrators have violated § 52-418 (a) (4) by exceeding their powers. "In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . The standard for reviewing a claim that the award does not conform to the submission requires what we have termed in effect, de novo judicial review. . . . Although we have not explained precisely what in effect, de novo judicial review entails as applied to a claim that the award does not conform with the submission, that standard best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. Our review is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred.

"In determining whether an arbitrator has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue, not whether that issue was correctly decided. Consequently, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator's decision cannot be

overturned even if the court is convinced that the arbitrator committed serious error. . . . Moreover, [e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Citations omitted; internal quotation marks omitted.) *Teamsters Local Union No. 677* v. *Board of Education*, 122 Conn. App. 617, 623–24, 998 A.2d 1239 (2010).

Here, as noted, the first issue submitted by the parties to the panel for decision was whether Pond's employment was terminated "for just cause consistent with the contract." The panel's award answered this question in the negative, ruling that the plaintiff had not terminated Pond's employment for just cause because, although termination was among the authorized sanctions for failure to pass a second town mandated drug test, it was not a mandatory sanction, but only the most serious sanction available for such a violation under the contract. Weighing the severity of the sanction against the seriousness of Pond's violation, which it characterized as a second technical failure of a town mandated drug test without proof of actual drug use, the panel concluded that the less severe sanction of suspension without pay or benefits until he took and passed another drug test was a more appropriate sanction than termination.

The plaintiff's challenge to the award, so rendered, is based on article XIV of the parties' agreement, which reserves to the plaintiff "full control of the policies, practices, procedures and regulations with respect to the employee," and provides further that the plaintiff's "actions with respect to such rights and responsibilities are not subject to review, except those specifically

abridged or modified by this Agreement."[5] According to the plaintiff, this provision reserves exclusively to it the right to promulgate and to enforce policies for the discipline of its employees, without interference by the defendant union or its members through the grievance arbitration process, except as specifically abridged or modified by the agreement. Here, then, it claims that, in the absence of any provision in the agreement so authorizing, the panel lacked authority to prevent the plaintiff from enforcing its policy of terminating employees in safety sensitive positions who twice fail town mandated drug tests.

The trial court's answer to this challenge, with which this court agrees, is that the plaintiff's argument ignores the major exception to the nonreviewability of its actions with respect to its employees, which is set forth in article XI of the agreement. Article XI expressly limits the rights of the plaintiff to discipline and to discharge its employees in several important ways. To begin with, § 11.0 of article XI imposes a just cause requirement on the plaintiff for the discharge or discipline of any employee for any reason. There are no exceptions to this requirement, for any class of employee, any kind of rules violation or any type of disciplinary action. Section 11.1 next mandates that "[a]ll disciplinary actions shall be applied in a fair manner and shall be consistent with the infraction for which disciplinary action is being applied," and further provides that "[t]he

[5] Article XIV, entitled, "Management Rights," provides: "It is recognized that the Town, through its Town Manager, has and will continue to retain the rights and responsibilities to direct the affairs of its departments and agencies under his jurisdiction in all of their various aspects, except those specifically abridged or modified by this Agreement. Such rights and responsibilities, including, but not limited to, full control of the policies, practices, procedures and regulations with respect to the employee by virtue of statutory and Charter provisions; consequently, actions with respect to such rights and responsibilities are not subject to review, except those specifically abridged or modified by this Agreement."

severity of the disciplinary action to be taken shall depend on the seriousness of the employee's violation. . . ."[6] Here, again, there are no exceptions to this requirement of gradated, proportional discipline for any class of employee, any kind of alleged violation of the plaintiff's policies, practices and procedures or regulations, or any type of disciplinary action. Finally, § 11.2 provides that "[a]ll disciplinary actions shall be subject to the grievance procedure," which, in turn, is set forth in article XII of the agreement. In light of these provisions, which plainly deprive the plaintiff of its otherwise unreviewable control over enforcement of its policies, practices, procedures and regulations by discharging or disciplining its employees, we cannot conclude that the arbitrators exceeded their powers under the contract by subjecting the plaintiff's termination of Pond's employment to the same gradated, proportional review of its severity compared to the seriousness of violation of its drug policy that is required for "[a]ll" other disciplinary actions under § 11.2 of the contract. Because the award resulting from that analysis draws its essence from relevant provisions of the contract, the plaintiff's challenge to it on the ground that it fails to conform to the submission must be rejected.

B

Having found that the discharge of Pond was not for just cause, in that it was not proportional in severity to the seriousness of his violation of the plaintiff's drug

---

[6] Specifically, article XI, § 11.1 states: "All disciplinary action shall be applied in a fair manner and shall be consistent with the infraction for which disciplinary action is being applied. The severity of the disciplinary action to be taken shall depend on the seriousness of the employee's violation. Disciplinary action shall include the following, but need not follow this order, in cases of serious or gross misconduct:

"a. verbal warning;

"b. written warning;

"c. suspension without pay; and

"d. discharge."

policy, the panel imposed a lesser form of discipline on him, suspending him without pay or benefits until he took and satisfactorily passed another drug test. The plaintiff contends that this second portion of the panel's award is not final or definite because it leaves open to the employee the important questions of when, where and by what method he is to be tested for drug use before he can return to work. The plaintiff takes the position that, with these questions left unanswered, the award is not final or definite because it does not fix the rights and responsibilities of the parties thereunder.

"[A]n award must be final as to the matters submitted so that the rights and obligations of the parties may be definitely fixed. . . . Whether an award is definite and final presents a question of law that we review de novo." (Citation omitted; internal quotation marks omitted.) *Bridgeport City Supervisors' Assn.* v. *Bridgeport*, 109 Conn. App. 717, 728, 952 A.2d 1248, cert. denied, 289 Conn. 937, 958 A.2d 1244 (2008).

Although it is true that the award does not specify when, where or by what method Pond is to be tested before he can return to work, the criticism that such a sanction is indefinite is not warranted by the language of the plaintiff's own drug policy, which the sanction is intended to enforce. Under that policy, any employee who is relieved temporarily of his duties because of failing a town mandated drug test must obtain a verified successful test result as a precondition to returning to work. Under the language of the drug policy, the employee bears the burden of obtaining the verified successful test result, but there is no specification as to when, where or by what means he must do so. In short, it is the standard approach of the plaintiff in such matters to leave the details of retesting open, and, thus, it can hardly complain that this award, which follows the same retesting protocol, is too indefinite to enforce.

It is axiomatic that every reasonable presumption must be made in favor of a challenged arbitration award. Upon review of the submission in this case, we conclude that the award appropriately draws its essence from the agreement and answers the question presented to the panel in a sufficiently mutual, final and definite manner to warrant its enforcement. Therefore, we conclude that the plaintiff has failed to meet its burden of proving that the award violated any of the statutory proscriptions set forth in § 52-418 (a) (4).

The judgment is affirmed.

In this opinion the other judges concurred.