******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# SALLY KELLOGG *v.* MIDDLESEX MUTUAL ASSURANCE COMPANY
## (SC 19803)

Palmer, Eveleigh, McDonald, Espinosa, Robinson, D'Auria and Vertefeuille, Js.*

*Syllabus*

Pursuant to statute (§ 52-418 [a] [3] and [4]), a trial court shall make an order vacating an arbitration award if it finds either that the arbitrators have been guilty of misconduct in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced, or if the arbitrators have exceeded their powers by manifestly disregarding the law.

The plaintiff sought to vacate an arbitration award setting the amount of the insured loss to her property resulting from a tree falling on the roof and chimney of her home during a storm. The plaintiff had filed a claim pursuant to a restorationist insurance policy issued by the defendant insurance company, under which payment of the full restoration cost of the insured property would be made in a two step process, with the defendant first making payment of the actual cash value of the loss, and, once the restoration or replacement was complete, paying the amount actually spent to repair, restore or replace the damaged building. When the plaintiff's appraiser and the defendant's appraiser were unable to agree on the amount of the loss, the plaintiff invoked the policy's appraisal provision, requiring the loss amount to be determined through an unrestricted arbitration proceeding. Under the terms of the policy, the plaintiff and the defendant each appointed one appraiser to serve as an arbitrator, and the two appraisers chose a neutral third party arbitrator to act as the umpire, all three of whom comprised the appraisal panel. After each appraiser independently estimated the loss, the umpire evaluated the differences between the two appraisers' estimates and set the loss, which was an amount between the two estimates. The defendant's appraiser accepted the umpire's valuation, which became the panel's decision on the amount of the loss. After the plaintiff filed its application to vacate, the defendant moved to dismiss as untimely the plaintiff's challenge to that portion of the arbitration award specific to the building. Although the trial court initially stated that it first would rule on the motion to dismiss, it held eight days of trial, covering all aspects of the motion to dismiss as well as the merits of the application to vacate. The trial court denied the motion to dismiss and granted the application to vacate the arbitration award because it violated § 52-418 (a) (3) and (4). The court determined that the panel prejudiced the plaintiff's substantial monetary rights by disregarding specific terms of the policy when it refused to award money for losses claimed by the plaintiff, and by manifestly disregarding the law by calculating depreciation when the policy provided for no depreciation. On appeal from the judgment granting the application to vacate, held:

1. The trial court improperly vacated the arbitration award and substituted its judgment for that of the panel when it determined that the award violated § 52-418 (3): that court's disagreement with the panel's ultimate conclusions and the amount of the award, in the absence of any determination that the panel engaged in misconduct impacting the fairness of the arbitration procedures, did not establish a violation of § 52-418 (3) and was not a proper ground for vacating the award; moreover, there was no claim that the arbitrators refused to postpone a hearing or to hear any of the plaintiff's evidence, or otherwise committed a procedural error, and there was testimony by the plaintiff's appraiser that the defendant's appraiser and the umpire considered all of the evidence that the plaintiff's appraiser wanted to present to them.

2. The trial court incorrectly concluded that the panel's decision to calculate depreciation when the restorationist insurance policy did not provide for depreciation evidenced a manifest disregard of the law that justified vacating the arbitration award pursuant to § 52-418 (a) (4): the court improperly engaged in a de novo review when it determined that the

panel's decision to withhold depreciation was an error obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator, as the meaning of the policy language was a matter for the panel to decide, and the plain language of the policy permitted the withholding of depreciation until repairs were made or the damaged property was restored or replaced; furthermore, that court misinterpreted the holding in *Northrop* v. *Allstate Ins. Co.* (247 Conn. 242), which held only that an insurer could not withhold depreciation from a replacement cost award after a homeowner had incurred a valid debt for repairs, and was not applicable to estimates, such as the estimate obtained by the plaintiff, which generally impose no obligation or debt on homeowners and do not address concerns that the insured will forgo repairs and receive a windfall, and, thus, the panel did not ignore a clearly governing legal principle when it permitted the defendant to withhold depreciation costs until the plaintiff had incurred a valid debt for the repair or replacement of the property.

Argued May 4—officially released August 22, 2017

*Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Kevin Tierney*, judge trial referee, denied the defendant's motion to dismiss; thereafter, the case was tried to the court, *Hon. Kevin Tierney*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment granting the application to vacate, from which the defendant appealed. *Reversed; judgment directed.*

*Stuart Glenn Blackburn*, for the appellant (defendant).

*Frank W. Murphy*, for the appellee (plaintiff).

*Wystan M. Ackerman* filed a brief for the Property Casualty Insurers Association of America as amicus curiae.

*Opinion*

D'AURIA, J. In this appeal, we consider whether the trial court properly vacated an arbitration award setting the amount of an insured loss caused by a tree falling on the insured's home. We conclude that the trial court improperly substituted its judgment for that of the appraisal panel, and we therefore reverse the trial court's judgment.

The plaintiff, Sally Kellogg, is the owner of a historic property in the city of Norwalk (property). She insured the property through a "[r]estorationist" policy issued by the defendant, Middlesex Mutual Assurance Company. This restorationist policy was different from a typical homeowners policy in that it had no monetary policy limit, and it covered the replacement or restoration cost of the property without deduction for depreciation. Under the policy, payment of the full restoration cost would not be immediate, but would be made in two parts, with depreciation initially withheld. The policy required the defendant to first pay the actual cash value of the loss. Once the restoration or replacement was complete, the policy required the defendant to pay the amount "actually spent to repair, restore or replace the damaged building."[1] This two step process is typical in replacement cost policies, intended to address concerns that a homeowner might accept the full restoration cost but not actually restore the property, thus receiving a windfall.[2]

While the restorationist policy was in effect, the property suffered a casualty loss when a four and one-half ton tree fell onto the roof and chimney during a storm, damaging the interior, exterior, and foundation of the home. Shortly after the incident, the plaintiff filed a claim on her restorationist policy. Because the plaintiff's and the defendant's adjusters were unable to agree on the amount of the loss, the plaintiff invoked the policy's appraisal provision. That provision required the loss amount to be determined through an unrestricted arbitration proceeding, meaning that the arbitrators are empowered to decide issues of law and fact, and the award is not conditioned on judicial review. See *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 89 n.3, 868 A.2d 47 (2005).

To establish the appraisal panel, the plaintiff and the defendant, pursuant to the restorationist policy, each appointed one appraiser to serve as an arbitrator, and these two appraisers chose a neutral third arbitrator to act as an umpire. The appraisers each independently set the loss and submitted their valuations to the umpire. The plaintiff's appraiser claimed the damage was in excess of $1.6 million, but the defendant's appraiser believed the property could be restored for approximately $476,000. The appraisers fundamentally disagreed on two issues: the extent of damage caused

by the tree, and the cost to repair the covered damage. The defendant's appraiser believed not all of the claimed damage was related to the incident and that much of the damage that was related could be fixed for less than the plaintiff's appraiser had claimed. The umpire evaluated the differences between the two appraisers' submissions and set the loss, which was an amount between the two submissions. Before setting the loss, the umpire visited the property seven times to evaluate the damage to the building and its contents. The umpire also reviewed and considered more than 300 pages of the plaintiff's submissions. He conducted hearings with multiple witnesses, including two asbestos abatement experts and a property damage expert. He also reviewed written submissions from other experts and consultants, all of which he considered when determining the award. On certain items, the umpire agreed with the valuations of the plaintiff's appraiser, and on other items he agreed with the defendant's appraiser. He then gave both appraisers his preliminary assessment of the loss and gave them an opportunity to challenge his assessment and to advocate for their respective positions.

The defendant's appraiser accepted the umpire's valuation, which became the appraisal panel's decision on the amount of the loss, and the panel issued its arbitration award in two parts: first, it awarded $578,587.64 for "replacement or restoration cost" of the building on the property, which the panel depreciated to its actual cash value of $460,170.16, with the difference withheld until the plaintiff completed repairs, and, second, the panel later awarded an additional $79,731.68 for the actual cash value loss to the plaintiff's personal property.

Subsequently, the plaintiff filed an application with the Superior Court seeking to vacate the arbitration award, alleging it was defective under General Statutes § 52-418.[3] The defendant moved to dismiss as untimely the plaintiff's challenge to that portion of the arbitration award specific to the building.

The trial court initially stated that it would first rule on the motion to dismiss, but it then went on to hold eight days of trial, covering all aspects of the motion to dismiss as well as the merits of the application to vacate the arbitration award, before ultimately deciding both at the same time. Even though the parties had submitted all factual and legal issues to unrestricted arbitration, the trial court took evidence on the entire appraisal process, including evidence on valuation of the loss, despite the defendant's repeated objections that such a process was beyond the scope of an application to vacate and would constitute a substitution of the trial court's judgment for that of the appraisal panel. The trial court overruled the objections, stating in one instance: "This is a case involving the testimony right

now of a homeowner who is seeking money damages so I'm treating it that way." Ultimately, the court accepted into evidence forty-two exhibits, containing hundreds of pages of documents, photographs, bills, and memoranda. The court also heard testimony from the umpire, the plaintiff's appraiser, and the plaintiff. The trial court allowed the plaintiff to present testimony about the value of the damage, the current state of her home, and whether the appraisal panel had reached the proper valuation.

On cross-examination of the plaintiff's appraiser, the defendant elicited testimony establishing the propriety of the arbitration proceedings. Although the plaintiff's appraiser disagreed with the amount of the panel's award, he did not question the umpire's conduct. To the contrary, he stated that the umpire had accepted all of the evidence he wanted to present to him, and the umpire never refused to hear any evidence regarding the loss. Nor did the plaintiff's appraiser accuse the umpire of being partial or unfair.

After the proceedings concluded, the court denied the defendant's motion to dismiss[4] and granted the plaintiff's application to vacate. The court determined that the arbitration award violated § 52-418 (a) for two reasons.

First, the trial court disagreed with the amount of the arbitration award. Relying on a valuation based on its own conclusions, the court decided that the award to the plaintiff was insufficient. The court identified thirty-four instances in which the plaintiff had claimed damage to a specific portion of the property and the panel awarded less than the plaintiff had requested, sometimes awarding nothing at all. The court apparently believed that by awarding less than the plaintiff had requested, the panel had prejudiced the plaintiff's "substantial monetary rights" and, therefore, the plaintiff had sustained her burden of proof under § 52-418 (a) (3).

Second, the court ruled that the decision of the appraisal panel "evidenced a manifest disregard of the nature and terms and conditions of the [r]estorationist insurance policy," and, therefore, the plaintiff had sustained her burden under § 52-418 (a) (4). More specifically, the court concluded, based on its own interpretation of the policy language, that the panel's decision "[was] in obvious error" when it calculated depreciation in a policy that "provides for no depreciation . . . ." The trial court interpreted our decision in *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 249–52, 720 A.2d 879 (1998), to conclude that our law prohibited the defendant from withholding depreciation. The court then rendered judgment in favor of the plaintiff, vacating the arbitration award and remanding the matter for a new arbitration hearing.

The defendant appealed to the Appellate Court, and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the defendant argues that the trial court erred in vacating the arbitration award because it engaged in an improper review of the evidence submitted to the appraisal panel. The defendant claims that the trial court substituted its judgment for that of the panel, instead of deferring to its findings and making every reasonable presumption in favor of the correctness of the award and the actions of the arbitrators. Applying de novo review of the trial court's decision; *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 475, 899 A.2d 523 (2006); we agree with the defendant that the trial court failed to properly defer to the arbitrators.

When considering a motion to vacate an unrestricted arbitration award, a trial court should not substitute its judgment for that of the arbitrators. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; *thus, the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact.*" (Emphasis added; internal quotation marks omitted.) *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 753–54, 980 A.2d 297 (2009). Furthermore, "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings." *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 585, 440 A.2d 774 (1981).

In light of these constraints, a court may vacate an unrestricted arbitration award only under certain limited conditions: "(1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [or] (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, supra, 293 Conn. 754. The trial court's ruling in the present case relied only on § 52-418, which sets out four defects that will justify vacating an award, only two of which are relevant here. The trial court found two of these defects present in the arbitration award. We conclude that neither of these grounds justified vacating the award and address each of the trial court's determinations in turn.

I

The trial court's first justification for vacating the arbitration award was that, in its view, the appraisal panel disregarded specific terms of the restorationist policy by refusing to award money for losses claimed by the plaintiff. The trial court therefore concluded that the panel had committed an "action by which the rights of [the plaintiff had] been prejudiced . . . ." See General Statutes § 52-418 (a) (3). More specifically, the trial court ruled that the panel had prejudiced the plaintiff's "substantial monetary rights . . . ." We disagree that this is a valid basis for vacating the arbitration award.

Section 52-418 (a) (3) provides that an arbitration award shall be vacated "if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ." This provision sets out three separate grounds for finding a defect in an arbitration: a refusal to postpone the hearing for good cause; a refusal to hear evidence; and an additional clause encompassing "any other action by which the rights of any party have been prejudiced . . . ." General Statutes § 52-418 (a) (3). Our cases have treated the third provision as applying to other varieties of *procedural* irregularity. See, e.g., *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 146–47, 523 A.2d 1271 (1987) (actions of arbitrators that warrant vacating arbitration award include participation in ex parte communications, ex parte receipt of evidence as to material fact without notice to party, holding hearings in absence of member of arbitration panel, and undertaking independent investigation into material matter after close of hearings and without notice to parties). We have not extended the reach of this clause to empower a court simply to disagree with the arbiter's ultimate conclusions on the questions submitted to arbitration. See id.; see also *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, 309 Conn. 767, 777, 75 A.3d 1 (2013) ("[i]t is clear that a party cannot object to an award [that] accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results"). To do so would completely destroy the deference our law affords to the arbitration process by allowing the trial court to substitute its own judgment on the merits of the question submitted to arbitration. See *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, supra, 293 Conn. 753–54 (arbitration awards are not subject to de novo review). Rather, a challenge to an arbitration award under § 52-418 (a) (3) is limited to whether a party was "deprived of a full and fair hearing before the arbitration panel." (Internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 475.

In the present case, there was no claim that the arbi-

trators refused to postpone a hearing, refused to hear any of the plaintiff's evidence, or otherwise committed a procedural error. To the contrary, the plaintiff's own appraiser testified that both the defendant's appraiser and the umpire considered all of the evidence he wanted to present to them.

The trial court nevertheless vacated the arbitration award on the basis of its own disagreement with the appraisal panel's ultimate conclusions on the issue of valuation. The trial court disagreed with thirty-four aspects of the arbitration award and would have issued a greater award for these items. For example, the trial court indicated that the panel should have awarded the plaintiff more than $150,000 to repair the property's chimney, rather than the $19,000 it did award. In other instances, the trial court took issue with the panel's decision not to award any money for certain claimed damage, which the panel determined was not entitled to coverage because it was not related to the tree falling on the house. The trial court used these points of disagreement as the basis for its conclusion that the decision of the appraisal panel had prejudiced the "substantial monetary rights" of the plaintiff. In the absence of any determination that the appraisal panel engaged in misconduct impacting the fairness of the arbitration *procedures*, the trial court's disagreement with the appraisal panel's ultimate conclusions cannot justify vacating its award. The appraisal panel was specifically empaneled to value the loss. Although it is clear that the trial court disagreed with the amount of the award, this disagreement does not establish that the arbitrators violated § 52-418 (a) (3) and was not a proper ground for vacating the arbitration award.

## II

The trial court's second justification for vacating the arbitration award pursuant to § 52-418 (a) (4) was that the decision of the appraisal panel "manifestly disregard[ed]" the law when it "calculated depreciation in a [r]estorationist insurance policy that provide[d] for no depreciation . . . ." We disagree with this conclusion.

Section 52-418 (a) (4) provides that an arbitration award shall be vacated "if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." This last section is commonly referred to as "manifest disregard of the law." *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992). "We have [repeatedly] emphasized, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO* v. *Norwalk*, 324 Conn. 618, 629, 153 A.3d 1280 (2017). "[T]hree elements

. . . must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is [well-defined], explicit, and clearly applicable." (Internal quotation marks omitted.) Id.

In the present case, the trial court concluded that the award of the appraisal panel met all three prongs of the manifest disregard of the law test. See id. The trial court determined that the award satisfied the first prong—the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator—because the panel withheld depreciation in a policy that provides for no depreciation. The meaning of the policy language was a matter for the panel to decide, however, and the trial court should not have engaged in a de novo review of this issue. See *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005) (when submission to arbitrator is unrestricted, "the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact" [internal quotation marks omitted]). More importantly, the trial court's conclusion is contradicted by the plain language of the policy, which clearly *permits* the withholding of depreciation until repairs are made or the damaged property is replaced. See footnote 1 of this opinion.

Furthermore, the trial court's conclusion that the panel's award satisfied the second and third prongs of the manifest disregard of the law test was also incorrect. The trial court interpreted our decision in *Northrop* to hold that an insurer may not withhold payment for depreciation whenever a homeowner had obtained an estimate for repairs in excess of the actual cash value award, as the plaintiff did in the present case. But *Northrop* held only that an insurer could not withhold depreciation from a replacement cost award after a homeowner had *incurred a valid debt* for repairs. *Northrop* v. *Allstate Ins. Co.*, supra, 247 Conn. 251–52. *Northrop* does not apply to estimates, which generally impose no obligation or debt on the homeowners and, unlike the incurrance of a valid debt, do nothing to address concerns that the insured will forgo repairs and receive a windfall. Consequently, we conclude that the trial court misinterpreted our holding in *Northrop*, and, thus, the panel did not ignore governing law or principles when it permitted the defendant to withhold depreciation costs until the plaintiff had incurred a debt for the repair or replacement of the property.

We conclude, therefore, that the trial court improp-

erly vacated the arbitration award.

The judgment is reversed and the case is remanded with direction to render judgment denying the plaintiff's application to vacate the arbitration award.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] The policy language specifically provided: "Covered property losses are settled as follows:

"(a) . . . (1) We will pay the cost to repair, restore or replace, without deduction for depreciation . . . .

"(2) We will pay no more than the actual cash value of the damage until actual repair, restoration or replacement is complete. Once actual repair, restoration or replacement is complete, we will settle the loss according to the provisions of (a)(1) above."

[2] The "actual restoration" requirement is found in virtually every replacement and restoration cost policy. See 2 B. Ostrager & T. Newman, Handbook on Insurance Coverage Disputes (17th Ed. 2016) § 21.06 [b], pp. 1731–32 ("Many insurance policies expressly provide that an insured may recover the [actual cash value] of destroyed property, and subsequently make an additional claim on a replacement cost basis. . . . [S]uch policies invariably include as a condition precedent to a supplemental replacement cost recovery a requirement that the insured first complete restoration of its property." [Citations omitted.])

[3] General Statutes § 52-418 (a) provides in relevant part: "[The trial court] . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[4] On appeal, the defendant has challenged the trial court's ruling on its motion to dismiss. Because we reverse the trial court's judgment with direction to deny the application to vacate, we need not address this issue.