******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# CITY OF MERIDEN *v.* AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, LOCAL 1016 ET AL.
## (AC 44483)

Moll, Suarez and DiPentima, Js.

*Syllabus*

The plaintiff city sought to confirm an arbitration award issued in connection with the termination of the defendant's employment as a police officer for the city. The city's chief of police, C, requested an internal affairs investigation of the defendant on the basis of his alleged insubordination and misappropriation of public funds after he enrolled in a training course at the city's expense even though his request to attend that training had been denied. Upon learning of this investigation, the defendant filed a complaint against C in which he alleged a pattern of retaliatory conduct. An independent consultant, R, was hired to conduct the internal affairs investigation of the defendant, and he concluded, in relevant part, that the insubordination allegation was substantiated. The city hired an attorney, A, to investigate the defendant's allegations against C. A concluded that the totality of the evidence did not support, and in many instances was contradictory to, a finding of retaliation by C. As a result of A's findings, the city manager placed the defendant on administrative leave and requested that an internal affairs investigation be conducted regarding the defendant's allegations against C. R was retained to act as an independent hearing officer. R reviewed the results of A's investigation and determined that many of the defendant's allegations against C were not made in good faith and that some were knowingly false, and that the defendant violated certain police department rules and an order pertaining to topics such as accountability, dishonesty and retaliatory conduct. Upon R's recommendation, the city terminated the defendant's employment. The defendant's union filed a grievance on behalf of the defendant, which was submitted to arbitration. After a hearing, the arbitration panel made numerous factual findings and issued its award, which stated that the defendant's termination had been for just cause. The city filed an application with the trial court to confirm the award, and the defendant subsequently filed an application to vacate the award. Following a hearing, the trial court rendered judgment granting the city's application to confirm the award and denying the defendant's application to vacate the award, from which the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his claim that the trial court applied the incorrect legal standard when it reviewed his application to vacate the arbitration award because he alleged that the award was procured by corruption, fraud or undue means pursuant to the applicable statute (§ 52-418 (a) (1)): the trial court properly determined that § 52-418 (a) (1)) did not apply to warrant vacatur of the arbitration award because, although the defendant repeatedly asserted, without any factual support, that an e-mail he discovered after the arbitration hearing was concealed from him and that the e-mail contained facts material to the panel's determination, the trial court did not have reason to consider that e-mail when rendering its decision, as the defendant did not provide the court with an affidavit to authenticate the e-mail or to show that he was the individual referenced in the e-mail; moreover, the defendant offered no explanation as to how he obtained the e-mail or why he was unable to discover it prior to the arbitration hearing; furthermore, the defendant's arguments concerning the e-mail and the effect it would have had on the award had he introduced it as evidence at the arbitration hearing were purely speculative.

2. The defendant could not prevail on his claim that the trial court erred in determining that the arbitration procedure was fair and impartial on the basis of his claim that the panel improperly allowed C to be present at the arbitration hearing while his subordinates were testifying: although the defendant argued that C's presence at the hearing had a chilling effect on the subordinates' testimony, he acknowledged that he

could not point to any specific instances in which that testimony was affected by C's presence and did not cite case law to support his arguments; moreover, the defendant did not argue that C should have been sequestered in order to prevent him from shaping his testimony to falsely corroborate the testimony of another witness, which is the purpose of sequestration; furthermore, it was for the arbitration panel to determine whether and when sequestration was to occur.

3. The defendant could not prevail on his claim that the trial court erred by overlooking the arbitration panel's reliance on an investigation that was not fair and impartial: although the defendant attempted to raise public policy concerns about the panel's alleged reliance on A's investigation by arguing that A's representation of the city and C in other matters prevented her from conducting a fair and impartial investigation of C in the present case, the defendant was essentially raising an evidentiary claim, and, because the submission to arbitration was unrestricted, the trial court was not permitted to review the evidence considered by the panel, and this court would not review the award for errors of fact; moreover, because the defendant had the opportunity to raise his concerns about A at the arbitration hearing and it was within the province of the panel to consider A's relationship with the city and C and what effect, if any, those relationships had on her investigation, the defendant failed to identify a clear public policy that allegedly was violated by the panel's award.

Argued February 14—officially released June 14, 2022

*Procedural History*

Application to confirm an arbitration award, brought to the Superior Court in the judicial district of New Haven, where the defendant Patrick Gaynor filed an application to vacate the award; thereafter, the case was tried to the court, *Young, J.*; judgment denying the defendant's application to vacate and granting the plaintiff's application to confirm, from which the defendant Patrick Gaynor appealed to this court. *Affirmed*.

*Patrick Gaynor*, self-represented, the appellant (defendant).

*Michael J. Rose*, with whom, on the brief, was *Christopher M. Neary*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The self-represented defendant, Patrick Gaynor, appeals from the judgment of the trial court denying his application to vacate an arbitration award rendered in favor of the plaintiff, the city of Meriden (city), in which a three member arbitration panel determined that the city had just cause to terminate his employment.[1] On appeal, the defendant claims that the court erred (1) in applying the standard for vacating an arbitration award because the award allegedly was procured by corruption, fraud or undue means, (2) in determining that the arbitration procedure was fair and impartial and (3) by overlooking the panel's reliance on an investigation that was not fair and impartial. We affirm the judgment of the court.

The following facts as found by the arbitration panel and procedural history are relevant to our resolution of the defendant's appeal. The defendant was employed by the city as a police officer with the rank of captain. On June 12, 2015, the defendant requested permission from Jeffrey Cossette, the city's chief of police, to take a training course in leadership, organizational behavior, and project management through Northwestern University. At that time, the defendant was serving as acting communications director, which is a position that can be filled by a nonpolice officer.[2] Cossette denied the defendant's request, citing budgetary considerations. Notwithstanding that denial, at the city's expense, the defendant signed up for the course at a cost of $4000 plus a $165 registration fee.

On September 1, 2016, Cossette requested that an internal affairs investigation be initiated on the basis of the defendant's alleged insubordination and misappropriation of public funds. Upon learning of the investigation, the defendant filed a complaint[3] against Cossette in which he alleged a pattern of retaliatory conduct as a result of his involvement in a criminal prosecution against Cossette's son.[4] Because of the defendant's complaint against Cossette, an independent consultant, Charles Reynolds,[5] was hired to make a determination regarding the defendant's alleged insubordination and misappropriation of public funds. Reynolds determined that the allegation of misappropriation of public funds was not substantiated because, as acting communications director, the defendant had the authority to expend those funds. Reynolds found that the allegation of insubordination, however, was substantiated.

The city hired Attorney Paula Anthony of Berchem, Moses & Devlin, P.C., to investigate the defendant's allegations against Cossette. Anthony conducted interviews and collected evidence. Anthony concluded that " '[t]he totality of the evidence reviewed does not support, and in many instances is contradictory to, a finding of retaliation.' " Upon receipt of Anthony's findings, the

city manager placed the defendant on administrative leave and requested that an internal affairs investigation be conducted regarding the defendant's allegations against Cossette. Sergeant Christopher Fry, who worked for the city's police department, conducted the investigation and concluded that the defendant had violated several of the department's policies and orders. Reynolds was retained to act as an independent hearing officer to review the results of the investigation and make recommendations based on those results.

Reynolds conducted a *Loudermill* hearing[6] on May 19, 2017, which lasted eight hours.[7] Reynolds evaluated the defendant's allegations against Cossette and found that none of the allegations had merit. In fact, Reynolds determined that many of the allegations were not made in good faith and that some were knowingly false. Reynolds further determined that the defendant violated two of the police department's rules and one of its orders pertaining to topics such as accountability, dishonesty and retaliatory conduct. Reynolds considered recommending that the defendant be demoted and receive counseling, but he ultimately recommended that the defendant's employment be terminated. Reynolds stated that " '[t]he overriding thing was the reckless regard for the truth, you know, how he didn't engage in fact finding and truthfulness, which is the stock in trade of a police officer . . . so the only option I had was to recommend termination.' "

The city terminated the defendant's employment in June, 2017. The defendant's union, American Federation of State, County and Municipal Employees, Local 1016, filed a grievance on behalf of the defendant, which was submitted to arbitration before the state Board of Mediation and Arbitration. The city and the defendant jointly submitted the following questions to be decided by the arbitration panel: "Was the termination of [the defendant] for just cause? If not, what shall the remedy be?" The submission was unrestricted. A panel of three arbitrators (panel) conducted a hearing over the course of twelve days, from November 3, 2017, through May 23, 2019. The parties then submitted posthearing briefs. On March 10, 2020, the panel issued its award, which stated: "The termination of [the defendant] was for just cause."[8]

The panel made a series of factual findings and noted that the defendant "was provided an extraordinarily wide latitude over the twelve days of hearings to provide any evidence, even with the most tangential relevance, to rebut the city's evidence supporting its decision to terminate his employment." The panel stated: "This case is about a dishonest employee." The panel found, among other things, that the defendant made allegations against Cossette that "he knew were false, or recklessly added them to the litany of allegations with no concern whether they were false or not." The panel stated that the defen-

dant "was clearly untruthful when testifying under oath" concerning a conversation he had had with an acquaintance, and that "it was readily observable that the [defendant] attempted to steer" the testimony of that acquaintance during his testimony at the hearing. The panel further noted that there was "a pattern of untruths and reckless disregard for the truth" by the defendant, and that he was trying to "bring down" Cossette.

On March 19, 2020, the city filed an application to confirm the arbitration award in the Superior Court. On April 17, 2020, the defendant filed an application to vacate the award. In that motion, he argued that there was "evident partiality on the part of the arbitrators" and stated that the arbitrators "committed misconduct" that prejudiced him. Specifically, he argued that the panel "refus[ed] to hear evidence pertinent and material to the controversy," "allow[ed] the [city] to introduce audio recordings for which the defendant had not been disciplined," "refus[ed] to compel [the city's] witness to disclose the identity of another who purportedly had information relevant to the proceedings," "refus[ed] the defendant's request to sequester the [city's] investigator . . . who was a material witness to the controversy," and "permit[ted] [the investigator] to fabricate an allegation that was prejudicial toward the defendant and refus[ed] to allow the defendant's counsel to examine [the investigator] regarding his allegations . . . ." He also argued that the award violated public policy because it punished the defendant for "bringing forth good faith complaints of misconduct by a law enforcement official that were not fairly and fully investigated . . . ." On November 2, 2020, upon agreement of the parties, the court held a hearing on both the city's application and the defendant's application.

On January 4, 2021, the court issued a memorandum of decision in which it denied the defendant's application to vacate the award.[9] The court stated that the "only proper issue" before it was whether the award conformed to the submission. The court concluded that it did. The court stated that the defendant "[did] not attack the conformity of the award to the submission" and "offered no evidence to suggest that the award does not conform."

The court noted that it "[found] none of the [defendant's] assertions to be credible even if they were justiciable and subject to review." The court stated that the defendant "substantially reassert[ed] the claims he made both at the arbitration hearing and in a voluminous posthearing brief. Those assertions [were] repeated in the present hearing: the underlying investigation was faulty and the investigators were biased. Neither of these are properly for the court's review." The court noted that the defendant presented ten claims of retaliation by Cossette, and "[t]he arbitrators found each to be meritless, with specific bases for each finding. The

arbitrators found multiple instances of [the defendant's] conduct which independently provided a basis for termination.

"In the hearing itself, the arbitrators . . . found [the defendant] to be reckless and untruthful. They found the testimony of [the defendant's] witness 'unreliable.' Each determination by the arbitrators is set forth with particularity." The court further stated: "It must be noted how vociferously the panel characterized [the defendant's] lack of credibility, both witnessed first-hand and by investigators. The arbitrators cited specific instances of [the defendant's] false statements and baseless accusations of retaliation both in the various investigations and in the hearing itself . . . ."

The court concluded: "Despite lengthy argument and hundreds of pages of filings, [the defendant] has failed to establish that the award was procured by corruption, fraud or undue means. He has shown no evident partiality or corruption on the part of any arbitrator. There is no assertion that the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown. There is no evidence that the arbitrators refused to hear evidence pertinent and material to the controversy or of any other action by which the rights of [the defendant] were prejudiced. There is no evidence that the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. There is no claim of statutory violation or violation of public policy. In short, [the defendant] has not met his burden of proof in his application for vacatur, even if the submission had been restricted." This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the relevant principles of law and standard of review, which are applicable to each of the defendant's claims. "When considering a motion to vacate an unrestricted arbitration award, a trial court should not substitute its judgment for that of the arbitrators. Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; *thus, the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact.* . . . Furthermore, [e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceed-

ings." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Kellogg* v. *Middlesex Mutual Assurance Co.*, 326 Conn. 638, 645–46, 165 A.3d 1228 (2017).

"In light of these constraints, a court may vacate an unrestricted arbitration award only under certain limited conditions: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [or] (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418." (Internal quotation marks omitted.) Id., 646. We review de novo the court's determination as to whether any of those exceptions apply. See, e.g., *Norwalk Medical Group, P.C.* v. *Yee*, 199 Conn. App. 208, 216, 235 A.3d 540 (2020); *Toland* v. *Toland*, 179 Conn. App. 800, 810, 182 A.3d 651, cert. denied, 328 Conn. 935, 183 A.3d 1174 (2018). We review the court's findings of fact for clear error. *Henry* v. *Imbruce*, 178 Conn. App. 820, 828, 177 A.3d 1168 (2017).

In the present case, the submission was unrestricted. The defendant does not challenge the award's conformance to the submission. Rather, his first two claims assert that the award should be vacated pursuant to § 52-418 (a), which provides in relevant part that "the superior court . . . shall make an order vacating the award if it finds . . . (1) . . . the award has been procured by corruption, fraud or undue means . . . ." We interpret the defendant's third claim as arguing that the award violates public policy.[10] We will address each claim in turn.

I

The defendant first claims that the court erred in applying the standard for vacating an arbitration award because the award was procured by corruption, fraud or undue means. We conclude that the court applied the correct standard when reviewing the defendant's application to vacate the arbitration award. Furthermore, we reject the defendant's contention that the award was procured by corruption, fraud or undue means.

As best we can discern, the defendant challenges the court's statement in its memorandum of decision that "[t]he only proper issue before the court is whether [the defendant] has met his burden to produce evidence sufficient to show that [the award] does not conform to the submission." We interpret his claim as arguing that because the court only considered whether the award conformed to the submission, it failed to consider whether the award should be vacated pursuant to § 52-418 (a) (1). Specifically, he asserts that he presented the court with evidence that the award relied on perjured testimony and that the court overlooked this evidence when rendering its decision on his motion.

The following additional procedural history is relevant to our resolution of this claim. Deputy Chief Timo-

thy Topulos testified at the arbitration hearing that he and the defendant had a personal friendship and a good working relationship. After the arbitration panel issued its award, the defendant claims to have obtained an e-mail from Topulos to the former city manager in which Topulos referenced an unnamed employee "who held [the police department] hostage for so many years" and "undermin[ed] [the police department's] mission and the public's trust and confidence . . . ."

In his brief to this court, the defendant argues that he is the employee referenced in Topulos' e-mail. He repeatedly asserts, without any factual support, that Topulos "concealed" this e-mail from him and the panel and that the e-mail contained facts material to the panel's determination. Specifically, the defendant argues that the e-mail contradicts Topulos' testimony about his relationship with the defendant and that "[t]he award relied on Topulos' feelings of friendship and his liking of [the defendant] . . . ." Because the defendant purportedly discovered this e-mail after the arbitration hearing and could not present it to the panel, he asserts that the panel was not aware of Topulos' animus toward him when it issued its award. The court did not mention Topulos' e-mail in its memorandum of decision, nor did it inquire further about the e-mail when the defendant brought the e-mail to the court's attention at the hearing.

Upon our review de novo of the court's decision, we conclude that the court properly determined that § 52-418 (a) (1) did not apply to warrant vacatur of the award.[11] We further conclude that the court did not have reason to consider Topulos' e-mail when rendering its decision. The defendant did not provide the court with an affidavit to authenticate the e-mail or to show that he was the unnamed employee referenced by Topulos. Rather, his arguments concerning the e-mail, and the effect it would have had on the award had he introduced it as evidence at the arbitration hearing, are purely speculative. Furthermore, the defendant offered no explanation as to how he obtained this e-mail or why he was unable to discover it prior to the arbitration hearing. A mere allegation, without evidentiary support, that an individual has intentionally concealed material facts is insufficient to demonstrate that an arbitration award has been procured by corruption, fraud or undue means. See *Doctor's Associates, Inc.* v. *Windham*, 146 Conn. App. 768, 781, 81 A.3d 230 (2013). Accordingly, the defendant's claim fails.[12]

## II

The defendant claims that the court erred in determining that the arbitration procedure was fair and impartial. Specifically, as we can best discern, he argues that the award contravenes § 52-418 (a) (1). The defendant claims that the panel wrongly allowed Cossette to be present at the arbitration hearing while his subordinates were testifying, over the defendant's objection. The

defendant argues that Cossette's presence had a chilling effect on the testimony of his subordinates. The defendant argues that, although he "cannot demonstrate that witnesses were chilled or changed [their] testimony based on Cossette's presence, the [panel's] ruling in permitting Cossette to remain created a substantial risk that this would occur . . . ."[13]

In analyzing this claim, the defendant makes a series of conclusory allegations, many of which he made before the trial court. In fact, he acknowledges that he cannot point to any specific instances in which the testimony of Cossette's subordinates was affected by Cossette's presence. Additionally, he does not cite case law to support his arguments. As our Supreme Court has stated, "[t]he obvious purpose of sequestering a witness while another is giving his testimony is to prevent the one sequestered from shaping his testimony to corroborate falsely the testimony of the other . . . ." (Internal quotation marks omitted.) *State* v. *Nguyen*, 253 Conn. 639, 649–50, 756 A.2d 833 (2000). The defendant does not argue that the panel should have sequestered Cossette for that purpose. Furthermore, as the court noted in its memorandum of decision, it was for the panel to "determine whether and when sequestration [was] to occur." Accordingly, we reject this claim.

### III

Lastly, the defendant claims that the court erred by overlooking the panel's reliance on an investigation that was not fair and impartial.[14] We disagree.

In his brief to this court, the defendant makes several references to the public policy concerns of having Anthony investigate the allegations that he had made against Cossette in his grievance. Therefore, we reasonably can interpret his claim as arguing that the award violates public policy because the panel relied in part on Anthony's investigation in issuing its award.[15] In his brief to this court, the defendant states that attorneys from Berchem, Moses & Devlin, P.C., including Anthony, have represented the city and Cossette "in various labor/pension matters prior to the [defendant's] complaint, during the pendency of the investigation, and thereafter." He argues that Anthony's representation of the city and Cossette prevented her from conducting a fair and impartial investigation of Cossette "while also fulfilling her duty to her clients in reviewing [the defendant's] claims and advising her clients of potential legal issues." He further argues that Anthony was "precluded from divulging information that would be [adverse] to the position of her clients, [who are the city] and Cossette."

"Our Supreme Court in *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, [252 Conn. 416, 747 A.2d 1017 (2000)], enunciated the proper standard of review for determining whether an arbitral decision

violates a clear public policy. . . . *Schoonmaker* require[s] a two-step analysis in cases such as this one in which a party raises the issue of a violation of public policy in an arbitral award. First, we must determine whether a clear public policy can be identified. Second, if a clear public policy can be identified, we must then address the ultimate question of whether the award itself conforms with that policy." (Citation omitted; internal quotation marks omitted.) *Toland* v. *Toland*, supra, 179 Conn. App. 811–12.

Although the defendant attempts to make a public policy argument about the award, he essentially raises an evidentiary claim about Anthony's investigation and the findings therein. By challenging the panel's "reliance" on Anthony's investigation, he is challenging the method through which the panel decided to admit and weigh evidence related to Anthony's investigation. Because the submission was unrestricted, the trial court was not permitted to review the evidence considered by the panel, nor will we review the award for errors of fact. The defendant had the opportunity to raise his concerns about Anthony at the arbitration hearing. It was within the province of the panel to consider Anthony's relationship with the city and Cossette and what effect, if any, those relationships had on her investigation, her report and the findings therein. Therefore, the defendant failed to identify a clear public policy that allegedly was violated by the panel's award. Accordingly, we conclude that the court did not err in its review of the defendant's arguments challenging the panel's reliance on Anthony's investigation.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Gaynor's union, American Federation of State, County and Municipal Employees, Local 1016, also was named as a defendant in the underlying action, but did not participate in this appeal. Accordingly, we will refer to Gaynor as the defendant throughout this opinion. The defendant declined union representation and retained his own counsel for the arbitration proceedings. He was self-represented before the trial court and is self-represented on appeal.

[2] The arbitration panel, however, found that the training program "was designed for police leadership functions."

[3] Although the arbitration panel's factual findings do not indicate with what entity the defendant filed his complaint, we note that the city investigated the allegations in the complaint.

[4] Cossette's son was indicted by a federal grand jury on November 14, 2012, and thereafter was tried, convicted, and imprisoned for criminal conduct not specified in this record. The defendant had brought the son's conduct to light and testified at his criminal trial.

[5] The arbitration panel described Reynolds as "a highly experienced prior police chief turned independent consultant, who has worked on the Oversight Commission for Police Reform in Northern Ireland, for the Department of Justice Civil Rights Division working on consent decrees, and [is] currently working for a federal judge in Oakland, California, monitoring the compliance with that city's negotiated [p]olice [d]epartment consent decree."

[6] Pursuant to *Board of Education* v. *Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), due process entitles a "tenured public employee" to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." "The opportunity to present one's 'side of the story' is generally referred to as a *Loudermill* hearing." *AFSCME, Council 4, Local 2663* v.

*Dept. of Children & Families*, 317 Conn. 238, 243 n.3, 117 A.3d 470 (2015).

[7] The defendant attended the hearing and was represented by counsel.

[8] In his brief to this court, the defendant represents that one of the arbitrators dissented to the award. The record reflects, however, that the arbitration award was signed by all three arbitrators on the panel.

[9] The court simultaneously granted the city's application to confirm the arbitration award.

[10] The defendant listed six issues in his brief; we have reframed the issues briefed for clarity.

[11] As stated previously, the court stated in its memorandum of decision that the defendant "failed to establish that the award was procured by corruption, fraud or undue means." This statement indicates that the court considered the defendant's argument that the award should be vacated pursuant to § 52-418 (a) (1), rather than solely considering whether the award conformed to the submission.

[12] Even if we were to accept the defendant's arguments as true, we note that the panel's factual findings make clear that the arbitration award did not hinge on Topulos' testimony. Over the course of the twelve day hearing, the parties presented evidence and the panel heard testimony from a number of witnesses, including the defendant. Although the panel referenced Topulos' testimony to support some of its findings, it made a number of other findings about the defendant's conduct that were supported by other evidence. The court stated in its memorandum of decision that "[i]t must be noted how vociferously the panel characterized [the defendant's] lack of credibility" and that "[t]he arbitrators cited specific instances of [the defendant's] false statements and baseless accusations of retaliation both in the various investigations and in the hearing itself . . . ." Thus, we fail to see how this e-mail would have had any impact on the panel's award had the defendant presented it to the panel as evidence.

[13] The defendant also argues that he did not have an opportunity to "fully examine" Fry, who accused him of tampering with his witness during the hearing. In its arbitration award, the panel stated that "it was readily observable that the [defendant] attempted to steer" the testimony of a witness, "rendering both [the defendant and the witness] complicit in providing false testimony" during the hearing. The defendant represents that the panel did not observe him trying to steer the witness' testimony by making facial expressions and shaking his head while the witness was testifying. Rather, he contends that it was Fry who brought his behavior to the panel's attention. He argues that the panel did not allow him to cross-examine Fry about his allegations of witness tampering. In light of the limited scope of review over the parties' unrestricted submission, we decline to reach the merits of this argument, as it constitutes an improper challenge to the panel's factual findings and other actions.

[14] This claim pertains to Anthony's investigation of Cossette, which was conducted in response to the defendant's grievance against Cossette. In his brief to this court, the defendant raises two related claims about this investigation. First, he claims that the court erred in overlooking that the panel relied on an investigation that did not comply with General Statutes § 7-294bb, which is titled "[s]tate and local police policy concerning complaints from the public alleging misconduct committed by law enforcement personnel." Second, he claims that the court erred in overlooking the panel's reliance on Anthony's investigation, which could not have been conducted in a fair and impartial manner because of Anthony's duty to her clients. We address these claims together.

[15] The court did not interpret the defendant's application to vacate the arbitration award as making any arguments that the award violated public policy. In its memorandum of decision, the court stated that there was "no claim of . . . violation of public policy."